No. 02-438

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 7

IN THE MATTER OF THE ESTATE
OF JOHN LOUIS OBER,
        Deceased.

APPEAL FROM:    District Court of the Ninth Judicial District,
                In and for the County of Teton,
                The Honorable Marc G. Buyske, Judge presiding.

COUNSEL OF RECORD:

        For Appellants:

                Gale R. Gustafson, Gustafson & Rohrer, Conrad, Montana

        For Respondent:

                Dirk Larsen, Larsen Law Firm, Great Falls, Montana

                                        Submitted on Briefs: October 31. 2002

                                        Decided:  January 23, 2003

Filed:

                    _____
                                    Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Joseph Ober (Joseph) was informally appointed the personal representative of the estate of his brother, John Louis Ober (John). Selma Klein (Selma) objected to Joseph's appointment, and filed a petition requesting to be appointed the personal representative of John's estate in the Ninth Judicial District Court, Teton County. Following a bench trial, the District Court issued its findings of fact, conclusions of law and judgment, in which it concluded that Selma was the common-law wife of John, and granted Selma's petition to be appointed personal representative of John's estate. Joseph appeals. We affirm the judgment of the District Court.

¶2     We restate the sole issue on appeal as follows:

¶3     Did the District Court err in finding that Selma Klein was the common-law wife of John Ober?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4     John died on September 30, 2001. On October 5, 2001, John's brother Joseph filed an application to be informally appointed the personal representative of John's intestate estate. The Clerk of the District Court granted Joseph's application that same day. On October 12, 2001, Selma filed an objection to Joseph's appointment as the personal representative of John's estate. Selma's objection asserted that, as the surviving wife of John, she was entitled to be appointed the personal representative of John's estate.

¶5     On October 19, 2001, Selma filed a petition requesting to be appointed the personal representative of John's estate. On December 7, 2001, the District Court issued an order,

2

precluding Joseph from making disbursements from John's estate without: (1) Selma's consent; or (2) an order of the District Court. Joseph submitted an inventory of John's estate on December 30, 2001.

¶6 A bench trial was conducted on February 28 and March 1, 2002. On May 15, 2002, the District Court issued its findings of fact, conclusions of law and judgment. The District Court found Selma to be the common-law wife of John, and granted Selma's petition to be appointed the personal representative of John's estate. On May 24, 2002, Joseph filed a motion requesting that the District Court amend its findings of fact, conclusions of law and judgment. Leonard Ober (Leonard), brother of John and Joseph, joined in the motion. The District Court denied Joseph and Leonard's motion on May 28, 2002. Joseph and Leonard appealed the District Court's findings of fact, conclusions of law and judgment on May 30, 2002.

**STANDARD OF REVIEW**

¶7 This Court reviews a district court's findings of fact to determine whether they are clearly erroneous. *Matter of Estate of Alcorn* (1994), 263 Mont. 353, 355, 868 P.2d 629, 630. When reviewing a district court's conclusions of law, we determine whether the court's interpretation of the law is correct. *Alcorn*, 263 Mont. at 353, 868 P.2d at 630.

**DISCUSSION**

¶8 **Did the District Court err in finding that Selma Klein was the common-law wife of John Ober?**

¶9 The State of Montana recognizes common-law marriages. *See* § 40-1-403, MCA. However, in order to establish a common-law marriage, the party asserting the existence of

the common-law marriage must prove that: (1) the parties were competent to enter into a marriage; (2) the parties assumed a marital relationship by mutual consent and agreement; and (3) the parties confirmed their marriage by cohabitation and public repute. *Matter of Estate of Hunsaker*, 1998 MT 279, ¶ 32, 291 Mont. 412, ¶ 32, 968 P.2d 281, ¶ 32.

¶10    In the instant case, Joseph and Leonard (the Appellants) concede that both John and Selma were competent to enter into a marriage. The Appellants further concede that John and Selma lived together in Selma's home for several years prior to John's death. They allege, however, that Selma failed to establish that she and John assumed a marital relationship by mutual consent, and that their marriage was confirmed by public repute.

¶11    The Appellants contend that the evidence introduced at trial establishes that neither John nor Selma consented to assume a marital relationship. The Appellants support their contention with the following evidence introduced at trial: (1) Selma did not assume John's last name; (2) John and Selma maintained separate property and bank accounts; (3) John and Selma filed their taxes as "single" taxpayers; (4) John and Selma filed documents with the Farm Service agency as "single" persons; (5) John did not designate Selma as the beneficiary on his life insurance policy; (6) John did not report Selma as his spouse to his employer; (7) John granted his brother Benno Ober power of attorney in three separate documents; (8) John continued to pay rent on an apartment in Conrad, Montana, after he moved into Selma's home near Power, Montana; and (9) Selma continued to receive her widow's survivor benefit from the Social Security Administration under the name of her deceased husband, Frank Klein. The Appellants further maintain that no evidence exists to prove that Selma called

4

John her husband, or that John called Selma his wife. The Appellants also question Selma's testimony that John proposed to her in 1987, and that the couple exchanged rings later that year. Finally, the Appellants assert that John was not wearing a ring in any of the photographs introduced into evidence at trial.

¶12 Selma counters that substantial evidence was introduced at trial to establish that she and John assumed a marital relationship by mutual consent. Specifically, Selma testified that John proposed to her in 1987. Selma stated that she accepted John's proposal, and that the couple discussed details of a marriage ceremony, such as location and potential members of the wedding party. Selma also testified that she and John exchanged rings shortly after his proposal. Selma stated that she wore her ring almost continuously during her common-law marriage to John, but that John wore his ring only sporadically. Selma further testified, as did Selma's grandson, that John's ring was cut off several years ago after John was involved in a minor accident which caused his hand to swell. Selma produced both her ring and John's "cut" ring at trial.

¶13 Selma testified that she was unaware her accountant had designated her a "single" person for tax purposes until it was brought to her attention by parties to the instant case. Additionally, Selma introduced address labels at trial which read "John or Selma Ober." Selma's granddaughter testified that John used address labels like those introduced every month when he paid his bills. Selma also introduced a photograph of herself at trial, which John had carried in his wallet. On the back of the photograph, in John's handwriting, were the words "my wife." Finally, Selma notes on appeal that no evidence was offered by the

5

Appellants at trial to contradict the testimony regarding John's handwritten comment on the back of the photograph.

¶14     The facts of the instant case are similar to those in both *Hunsaker* and *Alcorn*.   In *Hunsaker*, the surviving spouse testified that she had received a ring from her common-law husband.   *Hunsaker*, ¶ 35.   The surviving spouse further testified that the couple had displayed a grandfather clock in their home, which was engraved with their first initials intertwined over the letter "H."   The "H" on the clock represented Hunsaker, her common-law husband's last name.   *Hunsaker*, ¶ ¶ 7, 36.   This Court determined that the ring and grandfather clock, combined with the surviving spouse's testimony that she "felt married," constituted sufficient evidence to establish that the couple mutually consented and agreed to a marital relationship.   *Hunsaker*, ¶ 37.

¶15     In *Alcorn*, the surviving spouse testified that she had received a ring with a horseshoe design from her common-law husband.   The surviving spouse also testified that the couple had incorporated the design into a walkway at their home, as the walkway contained their names etched in the concrete beneath intertwining horseshoes.   *Alcorn*, 263 Mont. at 357, 868 P.2d at 631.   We concluded that the ring and concrete walkway, combined with the surviving spouse's testimony that the couple had agreed "that [they] were married," constituted sufficient evidence to indicate that the couple had mutually consented and agreed to a common-law marriage.   *Alcorn*, 263 Mont. at 357, 868 P.2d at 631.

¶16     This Court held in both *Hunsaker* and *Alcorn* that, based upon evidence in the record as well as testimony given by the surviving spouses, the burden of proving mutual consent to

enter a marital relationship had been satisfied. *Hunsaker*, ¶ 37, and *Alcorn*, 263 Mont. at 357, 868 P.2d at 631. In the instant case, the address labels and wallet photograph, when combined with Selma's testimony, could reasonably be construed to have the same effect. That is, although the Appellants introduced evidence to contradict Selma's assertion that she and John consented to a common-law marriage, the District Court weighed the testimony of the parties and found that John and Selma had indeed mutually consented to a marital relationship. The District Court, which was in the best position to observe Selma and her demeanor, accepted Selma's testimony regarding John's proposal, the wedding rings, and Selma's status as a "single" taxpayer. The District Court also concluded that John and Selma's use of separate bank accounts and surnames was not viewed as unusual by the community or indicative of their marital status. Moreover, we note that this Court "is unaware of any legal requirement that a wife assume the last name of her husband or that [husband and wife] list [each other] as beneficiaries on [their] insurance, retirement or health forms." *Alcorn*, 263 Mont. at 358, 868 P.2d at 632. Finally, public policy, as well as statutory law, favors the finding of a valid marriage. *See In re Marriage of Geertz* (1988), 232 Mont. 141, 145, 755 P.2d 34, 37, *and* § 26-1-602(30), MCA. As such, we decline to disturb the District Court's assessment of the credibility of the witnesses, and conclude that the District Court did not err in finding that John and Selma assumed a marital relationship by mutual consent.

¶17 The Appellants' second assertion is that John and Selma failed to confirm their common-law marriage by public repute. The Appellants support their assertion with the

testimony of several witnesses, who indicated that they believed John to be a bachelor. The Appellants further allege that the only witnesses to testify to John and Selma's common-law marriage were members or close friends of Selma's family.

¶18    A common-law marriage cannot exist if the parties have kept their marital relationship a secret. That is, to establish a valid common-law marriage, the couple must hold themselves out to the community as husband and wife. *Hunsaker*, ¶ 38. In the instant case, over thirty witnesses testified as to their opinions about the relationship between John and Selma. Members of Selma's family, as well as several members of their community, testified to their belief that John and Selma were legally married. One witness testified that she heard John call Selma his wife, and another witness stated that John and Selma had told her that they were married. As already noted, other witnesses testified to their belief that John was a bachelor. Finally, the Appellants both testified that they did not believe John and Selma to be in a marital relationship.

¶20    As we noted above, the District Court was in the best position to assess the credibility of the witnesses. See also *Alcorn*, 263 Mont. at 360, 868 P.2d at 633. The District Court evaluated the testimony regarding John and Selma's reputation in their community, and concluded that John and Selma had in fact established a common-law marriage by public repute. After a careful review of the record, we find no error in the District Court's judgment. Therefore, we decline to disturb the District Court's conclusion that John and Selma confirmed their common-law marriage by public repute.

¶21    For the foregoing reasons, the judgment of the District Court is affirmed.

/S/ PATRICIA COTTER

We Concur:


/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART