DA 07-0240

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 72N

BEVERLY M. VIG,

        Plaintiff and Appellant,

  v.

ESTATE OF LARRY CURTISS HUTCHESON,
Deceased,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DP 2006-028
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      David W. Harman, Attorney at Law, Libby, Montana

      For Appellee:

      Scott G. Hilderman, Johnson, Berg, McEvoy & Bostock, PLLP,
Kalispell, Montana

                       Submitted on Briefs:  February 13, 2008

                                 Decided:  February 26, 2008

Filed:

                _____
                          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and the Montana Reports.

¶2 This is an appeal by Beverly M. Vig from the District Court's February 2, 2007 Findings of Fact, Conclusions of Law, and Order declaring that Vig and Larry Curtiss Hutcheson were not married at the time of Hutcheson's death on May 2, 2006, or at any time prior thereto, and denying Vig's claims against Hutcheson's estate ("the Estate"). We affirm.

¶3 Hutcheson died intestate on May 2, 2006. His only surviving child, Tearsa, was appointed personal representative of Hutcheson's estate in June 2006. In September 2006, Vig objected to Tearsa's appointment and petitioned to have herself appointed as personal representative on the ground that she was Hutcheson's common-law wife. At the same time, she filed a creditor's claim against the Estate in the amount of $5,000 for care and services she provided to Hutcheson during his last illness. The District Court held a hearing on Vig's claims in January 2007. The court heard testimony from 15 witnesses and received 3 exhibits. In addition, the depositions of 10 witnesses were filed and, by stipulation of the parties, offered into evidence.

2

¶4     The District Court entered detailed findings of fact and conclusions of law.  In summary, the court found that Hutcheson and Vig met in Idaho in approximately 1998 and began living together soon after he offered her a job in his restaurant.  Aside from one or two brief separations, they continued to live together in Idaho and later in Troy, Montana, until Hutcheson's death in 2006.  The property in which Hutcheson and Vig lived together was titled solely in Hutcheson's name, although the two would refer to it as "our" house.  Hutcheson and Vig did most things together, including bowling, socializing, gardening, camping, and fishing, and Hutcheson was very kind and generous to Vig's children.  There was testimony that Hutcheson occasionally referred to Vig as his "wife" and many friends and acquaintances believed that they were married.

¶5     However, the court also found that there was "considerable" evidence that Hutcheson and Vig did not consider themselves to be married.  They had no joint accounts, assets, or debts; Vig never took Hutcheson's last name but, rather, retained the last name of a former husband; Hutcheson never purchased Vig an engagement or wedding ring; and upon returning from a trip to Las Vegas in the spring of 2006, Hutcheson stated to a friend that he and Vig were not married.  Hutcheson had previously been married six times and at least two of the other wives received rings from Hutcheson and married him in formal ceremonies.  For many years, Hutcheson assured Tearsa that he did not intend to marry Vig (although he apparently proposed to her in October 2005).  When the subject of marriage came up between Vig and Hutcheson over the years, Hutcheson would comment, "Why mess up a good thing?"

¶6     Hutcheson's income tax returns for the years 2003, 2004, and 2005 were introduced into evidence.  They showed that Hutcheson never claimed Vig as an exemption and that he listed his filing status as "single" on the 2005 return.  Furthermore, when Hutcheson was admitted to the Kootenai Medical Center in Coeur d'Alene, Idaho, in May 2006, Vig was variously identified as his "significant other," "friend," "girlfriend," and "partner."  On one record, Hutcheson is described as "a widower."  In Hutcheson's obituary, Vig referred to herself as Hutcheson's fiancée.

¶7     The court found the evidence "overwhelming" that Hutcheson and Vig did not assume a marital relationship by mutual consent and agreement.  While they agreed to be married in the future, that marriage never took place before Hutcheson's death.

¶8     Citing *In re Estate of Ober*, 2003 MT 7, ¶ 9, 314 Mont. 20, ¶ 9, 62 P.3d 1114, ¶ 9, and *Matter of Estate of Hunsaker*, 1998 MT 279, ¶ 32, 291 Mont. 412, ¶ 32, 968 P.2d 281, ¶ 32, the court observed that in order to establish a common-law marriage, the party asserting the existence of the common-law marriage must prove that (1) the parties were competent to enter into a marriage, (2) the parties assumed a marital relationship by mutual consent and agreement, and (3) the parties confirmed their marriage by cohabitation and public repute.  The court concluded that here, although the parties were competent to enter into a marriage (element 1), Vig did not prove that the parties assumed a marital relationship by mutual consent and agreement (element 2).  Rather, the evidence was overwhelming that Hutcheson and Vig did not consider themselves to be married.  The court also concluded that "while the proof on [element 3] is close," Vig did not prove the public repute requirement.  (Although the court resolved the third element against

4

Vig, we need not reach that analysis because the failure of proof as to the second element was sufficient.)

¶9 Finally, the court rejected Vig's $5,000 creditor's claim for services rendered to Hutcheson during the last one and one-half months of his life. While finding that Vig had provided "care, comfort, and assistance" to Hutcheson during his last illness, the court stated that these sorts of services were the type that one provides to a significant other without expectation of compensation. Moreover, the court found that any services Vig provided to Hutcheson during his last illness were offset by financial assistance that he provided to Vig during that same time and for years prior.

¶10 Following the entry of judgment in favor of the Estate, Vig filed a Motion to Vacate, Amend and for New Trial. This motion was denied.

¶11 On appeal Vig raises two issues, which we restate as follows:

1. Did the District Court err in concluding that Vig was not the common-law wife of Hutcheson?

2. Did the District Court err in denying Vig's creditor's claim for care and services?

¶12 In her briefs on appeal, Vig contends that the testimony and evidence admitted at the hearing was sufficient to prove that the parties assumed a marital relationship by mutual consent and agreement and that they confirmed their marriage by cohabitation and public repute. (There is no issue as to the parties' competency to enter into a marriage.) She also makes a short argument regarding the creditor's claim, without citation to any authority, claiming that she is entitled to compensation for taking care of Hutcheson as a

5

terminally ill person. In response, the Estate argues that the testimony and evidence support the District Court's decision and that Vig did not prove all of the elements of a common-law marriage. The Estate also argues that the creditor's claim was properly rejected.

¶13 We review a district court's findings of fact to determine whether they are clearly erroneous. *Hunsaker*, ¶ 25. The evidence is reviewed in the light most favorable to the prevailing party, and the credibility of witnesses and the weight assigned to their respective testimony are up to the trial court. *In re Estate of Bradshaw*, 2001 MT 92, ¶ 11, 305 Mont. 178, ¶ 11, 24 P.3d 211, ¶ 11. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Hunsaker*, ¶ 27.

¶14 We have determined to decide this case pursuant Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2003, which provides for memorandum decisions. It is manifest on the face of the briefs and the record before us that the appeal is without merit because the District Court's findings of fact are not clearly erroneous and because the legal issues presented are controlled by settled Montana law which the District Court correctly interpreted.

¶15 Accordingly, the District Court's decision is affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER