
DA 07-0228

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 83

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

EUGENE HOWARD ASHBY,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC 2006-358C
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Gregory Hood (argued), Assistant Public Defender, Kalispell, Montana

      For Appellee:

          Hon. Mike McGrath, Montana Attorney General, Mark Mattioli (argued),
Assistant Attorney General, Helena, Montana

          Ed Corrigan, Flathead County Attorney, Kalispell, Montana

      For Amicus Curiae:

          Merle Raph, Montana County Attorneys Association, Shelby, Montana

                      Argued and Submitted: October 24, 2007

                                Decided: March 11, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1     Eugene Howard Ashby (Ashby) entered a guilty plea to the offense of Issuing a Bad Check, a Felony Common Scheme.  The Eleventh Judicial District Court sentenced Ashby to a term of three years, all deferred, and imposed numerous conditions on his deferred sentence including a prohibition from consuming alcohol or other intoxicants and a prohibition from gambling.  Ashby objected to these conditions on the ground that they had no nexus to his underlying offense.  The District Court declined to remove the conditions.  Ashby appeals.  We reverse in part and affirm in part.

## ISSUE

¶2     A restatement of the issue on appeal is:

¶3     Did the District Court err in forbidding Ashby from consuming or possessing intoxicants and alcohol and from gambling or frequenting casinos?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     Ashby is a self-employed construction laborer who at the time this case was briefed on appeal lived and worked in Bigfork, Montana.  During late 2005 and the first half of 2006, Ashby wrote seventeen checks for which he did not have funds to cover.  He maintained that several of the checks were written in anticipation of an outstanding account receivable.  In August 2006 the Flathead County Attorney charged Ashby by Information with Issuing a Bad Check, a Felony Common Scheme.  A public defender was appointed and Ashby was arraigned in October 2006.  The record shows that at arraignment Ashby entered not guilty pleas to two counts of Issuing a Bad Check—one count was from a 2005 charge and the other was the August 2006 charge.

2

¶5 In late November Ashby entered into a plea agreement under which he changed his plea for the 2006 count but maintained a not guilty plea to the 2005 count. The District Court ordered a presentence investigation (PSI) and scheduled a hearing "in aggravation or mitigation of sentence" for January 2007. The PSI revealed that, over fifteen years, Ashby had sixteen traffic citations, one misdemeanor accountability offense and one misdemeanor issuing a bad check offense in 2001 that was dismissed. None of Ashby's driving violations involved alcohol but rather were speeding/careless driving, seatbelt and insurance violations.

¶6 At the January hearing the District Court dismissed the 2005 count and accepted Ashby's plea agreement to the other count. The court adopted the PSI-recommended sentence—three years, deferred—and imposed the conditions recommended in the PSI. At the sentencing hearing, Ashby objected to the prohibitions on alcohol and gambling. Characterizing the alcohol and gambling prohibitions as "standard conditions of probation," the District Court denied his request that these conditions be omitted. Ashby appeals.

¶7 In response to multiple received cases, including the case at bar, challenging the imposition of "stock" or "standard" probation conditions and relying on our rule in *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, we deem it appropriate and necessary to revisit the "nexus" analysis in *Ommundson*. As a result of this review, and as explained below, we now expand *Ommundson's* "nexus" rule to include a nexus to either the offense or the offender, rather than to the offense alone. We also announce a change in the standard under which we will review such probation conditions.

3

**STANDARD OF REVIEW**

¶8      For several years we have reviewed criminal sentences strictly for legality.[1]  We have applied this same "legality" standard to cases in which defendants are challenging certain probation conditions.  *State v. Malloy*, 2004 MT 377, ¶ 6, 325 Mont. 86, ¶ 6, 103 P.3d 1064, ¶ 6; *State v. Moody*, 2006 MT 305, ¶ 9, 334 Mont. 517, ¶ 9, 148 P.3d 662, ¶ 9; *State v. Greeson*, 2007 MT 23, ¶ 6, 336 Mont. 1, ¶ 6, 152 P.3d 695, ¶ 6.  However, in *State v. Herd*, 2004 MT 85, 320 Mont. 490, 87 P.3d 1017, we acknowledged that some criminal sentences required review beyond legality alone, specifically sentences that are ineligible for review by the Sentence Review Division because the offender is not sentenced to at least one year of incarceration.  We stated that in such cases, we first review the sentence for legality to determine whether it falls within statutory parameters and, if so, we then examine whether the sentencing court abused its discretion in imposing the sentence.  *Herd*, ¶¶ 18-23; a*ccord State v. Armstrong*, 2006 MT 334, ¶ 8, 335 Mont. 131, ¶ 8, 151 P.3d 46, ¶ 8.  This two-prong standard recognizes that some criminal sentences invoke both legality considerations and elements of judicial discretion.

¶9      We now conclude that the *Herd* standard of review is appropriate for cases challenging the legality and/or propriety of probation conditions.  We will first review a sentencing condition for legality.  Then, because sentencing statutes authorize sentencing judges to impose conditions on deferred or suspended sentences that constitute "reasonable restrictions or conditions considered necessary for rehabilitation or for the

---

[1]  In *State v. Montoya*, 1999 MT 180, ¶ 15, 295 Mont. 288, ¶ 15, 983 P.2d 937, ¶ 15, we held that our standard of review of criminal sentences was properly confined to legality only.

protection of the victim or society,"[2] the "reasonableness" of such conditions will be reviewed for an abuse of discretion.

## DISCUSSION

¶10   *Did the District Court err in forbidding Ashby from consuming or possessing intoxicants and alcohol and from gambling or frequenting casinos?*

¶11   We first address the District Court's order prohibiting Ashby from consuming or possessing intoxicants and subjecting him to regular or random drug and alcohol testing.

¶12   As noted above, at his sentencing hearing, Ashby objected to the inclusion of an alcohol prohibition in his sentencing conditions, arguing that it had no nexus to his "bad check" offense. The State argued that such a condition facilitated payment of restitution and therefore had the requisite nexus. The District Court judge, characterizing the alcohol prohibition as a "standard condition of probation," refused to remove it.

¶13   It is well-established that when a court defers imposition of sentence, it may impose reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society. Section 46-18-201(4)(o), MCA (before July 1, 2006, § 46-18-201(4)(n), MCA); *see also* § 46-18-202(1)(f), MCA (A court may impose any "limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society."). The statute also provides specific examples of such "reasonable restrictions or conditions" which include payment of various costs, community service, and house arrest. Sections 46-18-201(4)(d)-(g), (j), and (k), MCA.

---

[2]   Section 46-18-201(4)(n)(2005), MCA.

5

¶14 Our analysis in *Ommundson* has been frequently invoked in cases challenging sentence conditions. In *Ommundson*, we explained that it is insufficient that a condition of sentence relate generally to rehabilitation; rather, "there must be a correlation between the crime for which the defendant was convicted and the condition imposed." *Ommundson*, ¶ 4. Ommundson pled guilty to a charge of felony driving or in actual physical control of a motor vehicle while under the influence of alcohol (DUI). The district court sentenced Ommundson to fifty-four months at the Department of Corrections, forty-eight months suspended, conditioned upon Ommundson's participation in a sex offender treatment program. The court also prohibited him from having any contact with children without adult supervision. These conditions were based upon previous criminal convictions for indecent exposure. On appeal, Ommundson argued that these conditions were unlawful because they were not reasonably related to his DUI conviction. We agreed and reversed the judgment of the district court to the extent that it imposed sex offender treatment as a condition of sentence. We explained:

> [Section] 46-18-202(1)(e), MCA, only allows the imposition of limitations "reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(e), MCA. Although this grant of sentencing authority is broad, it is not without limit. We hold that, in order to be "reasonably related to the objectives of rehabilitation and protection of the victim and society," . . . a sentencing limitation or condition must have . . . some correlation or connection to the underlying offense for which the defendant is being sentenced. The "rehabilitation" and "protection of the victim and society" referenced in the sentencing statute must be read in the context of the charged offense. Section 46-18-202(1)(e), MCA. That is, the objectives are: (1) to *rehabilitate* the offender by imposing restitution or requiring treatment so that he or she does not repeat the same criminal conduct that gave rise to the sentence; and (2) to *protect* society from further similar conduct. (Emphasis in original.)

In the instant case, the District Court was authorized to impose conditions designed to rehabilitate Ommundson's drinking and driving and to protect society from future manifestations of such conduct. However, there is no evidence in this case that indecent exposure leads to increased occurrences of DUI, nor any evidence that treatment for indecent exposure will reduce the recurrence of alcohol abuse or lessen the incidence of DUI in society at large. In the present case, therefore, there simply is no nexus between the requirement that Ommundson participate in a sex offender program and the charged offense of DUI. The condition of Ommundson's sentence is not reasonably related to the rehabilitation of a DUI offender nor to the protection of society from drunk drivers.

*Ommundson*, ¶¶ 11-12. This analysis has been applied in *Greeson*, ¶ 15 (alcohol consumption had no nexus to identity theft); *Armstrong*, ¶ 14 (alcohol and gambling prohibition unrelated to Armstrong's assault and criminal mischief offenses); and *State v. Holt*, 2006 MT 151, ¶ 51, 332 Mont. 426, ¶ 51, 139 P.3d 819, ¶ 51 (no correlation between alcohol consumption and felony theft), among others. In each of these cases, we noted that the record contained no evidence that alcohol contributed to the offenses in question. In other words, when Greeson, Armstrong and Holt committed their offenses, they were not under the influence of alcohol, nor were the offenses committed in pursuit of alcohol. Neither was evidence presented that consumption of alcohol would make them more likely to commit the same offense again.

¶15 As indicated above, we are currently facing review of numerous cases seeking clarification or broadening of *Ommundson*. After detailed review and analysis of these cases, we conclude it is appropriate to expand the rule in *Ommundson* as follows: In imposing conditions of sentence, a sentencing judge may impose a particular condition of probation so long as the condition has a nexus to either the offense for which the offender

is being sentenced, or to the offender himself or herself. By way of example, if a defendant has a history or pattern of alcohol or drug abuse but this pattern was unrelated to the offense for which he is being sentenced, the sentencing court may nonetheless consider this defendant's history with alcohol and drugs, and impose an alcohol or drug-related probation condition that the court in its discretion determines will assist in this particular defendant's alcohol or drug rehabilitation. We caution, however, that courts may impose offender-related conditions only in those cases in which the history or pattern of conduct to be restricted is recent, and significant or chronic. A passing, isolated, or stale instance of behavior or conduct will be insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation.

¶16 In the case before us, Ashby correctly points out that he did not use alcohol or intoxicants during the commission of the crime, nor did he commit the crime to fund the purchase of alcohol or intoxicants. He further points out that the PSI revealed no history of alcohol or drug abuse and the court's Judgment and Sentence stated no facts supporting such a restriction or a requirement of drug and alcohol testing.

¶17 The State offers numerous reasons why the alcohol prohibition should be retained. It opines that: (1) the offense-nexus requirement is contrary to Montana's discretionary sentencing scheme, which requires sentencing courts to consider offender characteristics, history, and restitution to victims of crimes; (2) restitution would be accomplished sooner if probationers were not allowed to spend money on alcohol; (3) such restrictions are for the offender's own good as well as for the safety of law-abiding citizens; (4) this is a "common sense" restriction embraced by many jurisdictions; and (5) felony probation

implies a loss of liberty, and a prohibition against alcohol and drugs is a reasonable condition in any felony probation.

¶18 In addition, the State notes that Ashby has "a long history of driving unsafely and falling behind in the payment of his fines," and that alcohol consumption may impair his ability to make restitution payments and to remain law-abiding.

¶19 Applying the expanded *Ommundson* rule, we discern neither an offense nexus nor an offender nexus that would support an alcohol prohibition. There is nothing in the record to support a finding that Ashby's offense was in any way alcohol or drug-related, nor would such a prohibiting condition be more likely to protect society from further bouts of writing bad checks. Additionally, there is nothing in the record to support a finding that such a restriction should be imposed for the purpose of rehabilitating Ashby or ameliorating an alcohol or drug-related problem. Simply put, an alcohol and drug prohibition will not assist in rehabilitating Ashby because there is no evidence that he has a drug or alcohol problem. Therefore, we reverse the District Court's restriction precluding Ashby from possessing or consuming alcohol.

¶20 Turning now to the District Court's inclusion of a ban on gambling, we addressed a similar situation in *State v. Kroll*, 2004 MT 203, 322 Mont. 294, 95 P.3d 717. Kroll, like Ashby, was charged with the felony offense of issuing bad checks as part of a common scheme. *Kroll*, ¶ 8. The PSI recommended, among other things, that Kroll refrain from entering casinos or playing any games of chance. *Kroll*, ¶ 9. At sentencing, Kroll objected to the gambling restriction but the district court imposed it nonetheless. *Kroll*, ¶ 10. Kroll appealed, arguing that the gambling prohibition lacked a correlation to

9

his offense. *Kroll*, ¶ 26. We held that a gambling restriction was reasonable "given the nature of the offense of issuing bad checks, and Kroll's evident lure to easy money-making schemes." *Kroll*, ¶ 30. We noted that the PSI indicated that Kroll had been charged on multiple occasions with issuing bad checks and that he owed several thousand dollars in restitution at the time of sentencing. We concluded that "restricting [his] right to gamble [bore] a sufficient connection to the underlying offense . . . ." *Kroll*, ¶ 31. Given Ashby's similar background, a similar conclusion is warranted here.

¶21 Nothing in the record indicates that Ashby has a history of gambling; however, the PSI reveals evidence of previous financial irresponsibility on Ashby's part. He owes approximately $11,000 to collection agencies for various unpaid debts spanning several years and approximately $11,700 in restitution for the current offense. He has been charged previously with issuing a bad check and has been convicted of violating the financial accountability statutes regarding his vehicle's insurance. Given this evidence of considerable financial irresponsibility, a sentencing judge may reasonably conclude that such a prohibition on gambling is appropriate to further rehabilitate Ashby's ability to manage his finances.

¶22 Against this framework, we offer two final cautions. First, we remind defendants that they must object to an improper condition at or before sentencing, and that failure to do so may result in waiver. As we have consistently held, we will not put a district court in error on the basis of objections raised for the first time on appeal—this pertains to reviewing sentencing issues as well. In *State v. Kotwicki*, 2007 MT 17, ¶ 8, 335 Mont. 344, ¶ 8, 151 P.3d 892, ¶ 8, we held that Kotwicki's failure to object to the court's

oversight of his ability to pay the $25,000 fine included in his sentence constituted a waiver that prevented us from reviewing the issue for the first time on appeal. However, in the event an illegal, rather than objectionable, condition is not challenged contemporaneously, we will continue to review such challenge on appeal under *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979).

¶23 Second, we note that many courts, including the District Court in the present case, have been routinely imposing alcohol and gambling conditions, considering them to be "standard" or "universal." They are not. Some "standard" conditions do exist, having been mandated by the Legislature and codified in the Administrative Rules of Montana. However, neither alcohol nor gambling restrictions, nor other similar conditions considered by some courts as stock conditions, are mandated—either by the law or by the facts of the particular case before the court. In such event, we will not hesitate to strike such conditions upon proper objection by the defendant.

## CONCLUSION

¶24 Having determined that the alcohol restriction is not "reasonably related" to Ashby's crime of writing bad checks nor is it necessary to promote rehabilitation since Ashby does not have a history of significant or chronic alcohol or drug abuse, we reverse and remand with instruction to the District Court to strike this condition from Ashby's sentence. However, we affirm the inclusion of the gambling restriction for the reasons set forth above.

/S/ PATRICIA COTTER

11

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE
/S/ JOHN WARNER
/S/ BRIAN MORRIS