DA 07-0431

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 178

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

TRAVIS W. KIRKBRIDE,

       Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District, In and For the County of Lewis and Clark, Cause No. ADC 06-327 Honorable Dorothy McCarter, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

           Jim Wheelis, Chief Appellate Defender; Lisa S. Korchinski, Assistant Appellate Defender; Helena, Montana

      For Appellee:

           Hon. Mike McGrath, Montana Attorney General; Tammy Plubell, Assistant Attorney General

           Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs: March 6, 2008

Decided: May 21, 2008

Filed:

_____
Clerk

District Court Judge Gregory R. Todd, sitting for Justice W. William Leaphart, delivered the Opinion of the Court.

¶1     Travis W. Kirkbride (hereafter Kirkbride) appeals from his sentence in the District Court for the First Judicial District, Lewis and Clark County, on charges of deliberate homicide under § 45-5-102(1)(a), MCA.  Kirkbride was sentenced to life in prison, with no parole eligibility for fifty-five (55) years.  We affirm.

¶2     We restate the issues on appeal as follows:

¶3     1.  Did the District Court err when it relied on a "need for retribution" as a factor in sentencing Kirkbride?

¶4     2.  Did the District Court err by imposing a restriction on Kirkbride's parole eligibility for fifty-five (55) years?

¶5     The instant appeal requires the Court to determine whether a trial court judge can legally pronounce a sentence that is partially based on a need for retribution and whether a trial court can legally pronounce a sentence containing a partial parole restriction. The Court answers both questions in the affirmative.

### FACTUAL AND PROCEDURAL BACKGROUND

¶6     On the evening of December 8, 2006, Paul Raftery (hereafter Raftery) was walking home in Helena, Montana.  Kirkbride and Robert Rickman (hereafter Rickman) agreed to commit robbery in order to obtain money for drugs.  When they saw the victim, Raftery, walking up Lawrence Street, they began following him.  Raftery noticed they were following him and crossed the street.  Rickman approached Raftery, called out to him, and punched him in the face.  Raftery yelled for help and attempted to get away, at

which point Kirkbride stabbed him in the back with a large hunting knife. This blow was fatal, puncturing Raftery's left lung and pericardial sack and striking the pulmonary artery. Raftery again attempted to get away. This time Rickman tripped him. While Raftery was on the ground bleeding, Rickman and Kirkbride took Raftery's wallet. Rickman and Kirkbride returned to their vehicle and fled.

¶7 Kirkbride and Rickman threw the wallet, knife, Kirkbride's coat, and Rickman's jacket into a dumpster in central Helena. Meanwhile, two citizens heard Raftery's cry for help and called 911. Emergency responders found Raftery unresponsive and bleeding from his back. He was transported to St. Peter's Hospital and pronounced dead upon arrival. On December 11, 2006, Kirkbride confessed to involvement in the slaying of Raftery, implicated Rickman, and took law enforcement officers to the dumpster where officers found the wallet and a bloody knife.

¶8 Kirkbride was charged with deliberate homicide, a felony, under § 45-5-102(1)(a), MCA. On February 14, 2007, Kirkbride pled guilty to deliberate homicide. The sentencing judge sentenced Kirkbride to life in prison with no possibility of parole for fifty-five years. One of the bases for Kirkbride's sentence was "the victim's family's need for retribution." Kirkbride brings the instant appeal challenging the legality of a sentence on three grounds. Kirkbride argues that basing a sentence on the need of the victim's family for retribution renders the sentence illegal. Kirkbride also contends his sentence was illegal because sentencing judges lack statutory authority to impose partial parole restrictions. Finally, Kirkbride asserts the judge's consideration of the presentence

3

investigation report (PSI), which referenced Raftery's status as a Montana lawyer and law clerk for the Montana Supreme Court, renders the sentence illegal.

**DISCUSSION**

**STANDARD OF REVIEW**

¶9　"[The Court] review[s] criminal sentences that include at least one year of actual incarceration for legality only." *State v. Rosling*, 2008 MT 62, ¶ 59, 342 Mont. 1, ¶ 59, ___ P.3d ___, ¶ 59. "Our review is confined to determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes." *Rosling*, ¶ 59. "This determination is a question of law; as such, our review is de novo." *Rosling*, ¶ 59. "Trial judges are granted broad discretion to determine the appropriate punishment for offenses." *State v. Erickson*, 2008 MT 50, ¶ 10, 341 Mont. 426, ¶ 10, 177 P.3d 1043, ¶ 10. "On appeal we will not review a sentence for mere inequity or disparity." *Erickson*, ¶ 10.

¶10　***Issue 1.  Did the District Court err when it relied on a "need for retribution" as a factor in sentencing Kirkbride?***

**Retribution is a component of punishment**

¶11　Kirkbride correctly argued that retribution is not specifically among the sentencing policies articulated in § 46-18-101(2), MCA, or the sentencing principles articulated in § 46-18-101(3), MCA. Kirkbride also argued sentencing policies and principles were violated by his sentence that was based on Raftery's status and his family's need for

4

retribution. But the policies found in § 46-18-101(2), MCA, include punishing and holding offenders accountable, incarcerating violent offenders, and providing reparations to victims. The Court has repeatedly said retribution is a component of punishment. For example, "[a] sentence of imprisonment following a criminal conviction is imposed because a particular crime was committed, and its purpose is both retributional and rehabilitational." *Matter of C.S.*, 210 Mont. 144, 146, 687 P.2d 57, 59 (1984). We restated this declaration of purpose in 1993. *Matter of B.L.T.*, 258 Mont. 468, 473, 853 P.2d 1226, 1229 (1993).

¶12 *Matter of B.L.T.* and *Matter of C.S.* are not the only cases in Montana that establish retribution is a component of punishment. *See e.g. State v. Mount*, 2003 MT 275, ¶¶ 70, 73, 317 Mont. 481, ¶¶ 70, 73, 78 P.3d 829, ¶¶ 70, 73. ("[One] factor addresses traditional aims of punishment-i.e., retribution and deterrence." The Court also said, "the more a statute promotes the traditional aims of retribution and deterrence, the more likely the statute is punitive . . . .") "A civil sanction will be deemed . . . punishment in the constitutional sense only if the sanction 'may not fairly be characterized as remedial, but *only* as a deterrent or retribution.'" *Frazier v. Montana State Dept. of Corrects.*, 277 Mont. 82, 86, 920 P.2d 93, 96 (1996) (*quoting Bae v. Shalala*, 44 F.3d 489, 493 (7th Cir. 1995) (internal quotation marks omitted)). "[A] civil penalty is 'punishment' . . . if it 'cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes.'" *State v. Nelson*, 275 Mont. 86, 91, 910 P.2d 247, 250 (1996) (*quoting United States v.*

*Halper*, 490 U.S. 435, 448, 109 S. Ct. 1892, 1901-02 (1989)). The Court's decisions spanning over two decades establish retribution is one of the components of punishment.

¶13 "*Stare decisis* is the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 2609 (1991). "*[S]tare decisis* is a fundamental doctrine which reflects our concerns for stability, predictability and equal treatment." *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996) (internal citation and quotation marks omitted). "It is of fundamental and central importance to the rule of law." *Gatts*, 279 Mont. at 51, 928 P.2d at 119 (internal citation and quotation marks omitted). The Court follows prior precedents and holds a judge may consider retribution because prior precedent deems retribution a component of punishment.

¶14 Nevertheless, it is important to note that this is not a case where the only basis for the sentence is retribution. The trial court judge did not say there was little need for either general or specific deterrence and that there was only the slimmest chance for the defendant to reoffend. Instead, the judgment and commitment of the sentencing judge reflected retribution as only the third basis for the sentence. The other bases were "the likelihood of defendant's rehabilitation is minimal, [and] the defendant poses a grave risk to society." Kirkbride had a juvenile criminal record and spent six months at Pine Hills Youth Correctional Facility until he turned 18. He was kicked out of Job Corps and stole property from his parents a few days before Raftery's homicide to get money for drugs. Based on a psychological examination, the sentencing judge found that "the defendant

6

lacks conscience, and . . . his sociopathic personality will not change over time." The psychologist had rarely, if ever, seen a young man with a worse chemical dependency problem.

¶15    Kirkbride also asserts the content of the PSI renders his sentence illegal because the PSI referred to Raftery as a Montana lawyer and Montana Supreme Court law clerk. Kirkbride further argues nothing in § 46-18-101(2), MCA, or § 46-18-101(3), MCA, indicates Montana sentencing should be affected by the victim's relationship to the law. While the PSI noted Raftery's status as a lawyer and law clerk, the PSI also stated, the crime "would be no less heinous if Mr. Raftery were a convenience store clerk." Moreover, the Judgment and Commitment of Kirkbride's sentencing judge does not refer to Raftery's status as a lawyer or law clerk. Therefore, the PSI did not make the sentence illegal.

¶16    *Issue 2. Did the District Court err by imposing a restriction on Kirkbride's parole eligibility for fifty-five (55) years?*

**Judges may impose partial parole restrictions**

¶17    Section 46-18-202(2), MCA, in pertinent part, says, "the sentencing judge may also impose the restriction that the offender is ineligible for parole." Kirkbride argues the phrase "is ineligible for parole" only allows the sentencing judge to restrict parole for all of a sentence or none of it. The Court disagrees. Recently, the Court described the task of statutory interpretation as "simply to ascertain and declare what is in terms or in substance contained in the statute, not to insert what is omitted or to omit what is

7

inserted." *State v. Ashmore*, 2008 MT 14, ¶ 12, 341 Mont. 131, ¶ 12, 176 P.3d 1022, ¶ 12 (*quoting* § 1-2-101, MCA) (internal quotation marks and brackets omitted).

¶18    The Court has, on prior occasion, examined other parts of Title 46, chapter 18 in order to determine the meaning of § 46-18-202(2), MCA. *Gratzer v. Mahoney*, 2006 MT 282, ¶¶ 4-7, 334 Mont. 297, ¶¶ 4-7, 150 P.3d 343, ¶¶ 4-7 (examining § 46-23-103(4), MCA (1981), and § 46-23-1001(3), MCA (1981), in order to determine the meaning of "term" contained in § 46-18-202(2), MCA (1981)). Section 46-18-202(2), MCA, is not the only provision of Title 46, chapter 18 dealing with the restrictions that sentencing judges may put on sentences. For example, the provision directly preceding § 46-18-202(2), MCA, empowers trial court judges to attach to sentences "any other limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202(1)(f), MCA. It is incredible to interpret § 46-18-202(2), MCA, as imposing an all or nothing limitation on parole restrictions based on the phrase "is ineligible for parole" when the prior section gives the judge great discretion that is limited only by reasonableness.

¶19    Kirkbride correctly argues *State v. Thomas*, 285 Mont. 112, 121-23, 946 P.2d 140, 145-47 (1997), arose on the knowing and voluntary nature of a guilty plea and did not address the lawfulness of partial parole restrictions. However, in order to conclude the guilty plea was lawful, the Montana Supreme Court deemed the partial parole restriction imposed under § 46-18-202(2), MCA, a "discretionary parole restriction." *Thomas*, 285 Mont. at 122, 946 P.2d at 146. It is implausible to interpret "a discretionary parole restriction" as allowing only enough discretion to hand down an all or nothing parole

restriction. Such a construct could be used to greatly diminish the discretion given to trial court judges who have given sentences that are the subject of future appeals before the Court.

¶20 Moreover, giving the trial court judge discretion is one of Montana's sentencing policies. *See e.g.* § 46-18-101(3)(d), MCA ("[s]entencing practices must permit judicial discretion to consider aggravating and mitigating circumstances"). The Court is unwilling to allow the phrase "ineligible for parole" to limit sentencing judges to all or nothing parole restrictions. To do otherwise would be bad public policy as one of Montana's sentencing policies would be greatly diminished.

¶21 The passage of time and the actions, or more appropriately inactions, of Montana's legislature provide a final reason to hold partial parole restrictions lawful. Montana sentences containing partial parole restrictions have been upheld against other challenges at least since 1988. *See e.g. State v. Wirtala*, 231 Mont. 264, 752 P.2d 177 (1988), *overruled on other grounds*, *State v. Lane*, 1998 MT 76, ¶ 41, 288 Mont. 286, ¶ 41, 957 P.2d 9, ¶ 41. Montana's legislature has convened every two years since. The legislature is presumed to know how the Court has interpreted its statutes. *Sampson v. Nat'l Farmers Union Prop. & Cas. Co.*, 2006 MT 241, ¶ 20, 333 Mont. 541, ¶ 20, 144 P.3d 797, ¶ 20. Therefore, if the Montana legislature disapproved of partial parole restrictions, it could have changed the text of § 46-18-202(2), MCA, in order to ban such partial restrictions. Since the text of § 46-18-202(2), MCA, is unchanged, the Court presumes the legislature approves of partial parole restrictions. Therefore, the Court holds partial parole restrictions do not offend § 46-18-202(2), MCA.

# CONCLUSION

¶22    The Court holds an illegal sentence did not result from the sentencing judge partially basing the sentence on the need of the victim's family for retribution. Multiple decisions of the Montana Supreme Court establish retribution as a component of punishment. The content of the PSI did not render Kirkbride's sentence illegal. An illegal sentence did not result from the imposition of a partial parole restriction. The phrase "is ineligible for parole" does not limit a sentencing judge's discretion to impose all or nothing parole restrictions. To hold otherwise would harm Montana's sentencing policy of promoting discretion. Furthermore, partial parole restrictions have been a part of Montana Supreme Court decisions since 1988, and the Montana legislature has not altered the text of the statute. Therefore, the Court presumes the Montana legislature concluded partial parole restrictions do not offend § 46-18-202(2), MCA. The sentence of the trial court is, therefore, affirmed.

/S/ GREGORY R. TODD
District Court Judge G. Todd Baugh
sitting for Justice W. William Leaphart

We concur:

/S/ SUSAN P. WATTERS
District Court Judge Susan P. Watters
sitting for Chief Justice Karla M. Gray

/S/ INGRID GUSTAFSON
District Court Judge Ingrid Gustafson
sitting for Justice Patricia Cotter

/S/ RUSSELL C. FAGG
District Court Judge Russell C. Fagg
sitting for Justice Jim Rice


/S/ G. TODD BAUGH
District Court Judge G. Todd Baugh
sitting for Justice Jim Nelson