DA 08-0027

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 429

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DAWN ELIZABETH PARK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-01-419
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        David E. Stenerson, Deputy Public Defender, Hamilton, Montana

      For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Mark W. Mattioli, Assistant Attorney General, Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney; Jennifer S. Clark, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  October 1, 2008

Decided:  December 16, 2008

Filed:

_____
                    Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Dawn Elizabeth Park (Park) appeals from an order of the Fourth Judicial District Court, Missoula County, re-sentencing her to a five year suspended sentence to the Department of Corrections (DOC).  We affirm.

¶2     Park presents the following issue for review:

¶3     Whether the district court imposed an illegal alcohol condition as part of Park's original suspended sentence.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4     The Montana Highway Patrol responded to an accident on U.S. Highway 93 outside of Florence, Montana, on June 13, 2001.  The accident involved a red and silver GMC pickup truck driven by Park and a green Chevy blazer driven by Elaine Zawada (Zawada).  A witness, Brad Edden (Edden), told the attending officer that a red and silver GMC pickup truck had passed him while it swerved all over the road.  Edden was traveling approximately 60 to 65 miles per hour at the time.  Edden saw the GMC cross the white fog line and travel back across the centerline and onto the rumble strips.  Edden witnessed the GMC's attempt to pass the blazer then cut back into the right lane and collide with the blazer from behind.  The vehicles' impact caused the blazer to spin into the ditch.  The blazer turned sideways and began to roll.

¶5     Another witness, Christy Bennett (Bennett), told the officer that Park almost ran into her several times before the accident with Zawada.  Bennett stopped at an intersection as she left a nearby subdivision.  Bennett witnessed Park run through a stop sign to her right and almost hit Bennett's vehicle.  Bennett approached a second stop sign and Park almost hit her

vehicle from behind. Bennett stopped and turned right. As Bennett turned right, Park quickly drove around her on the right, and "took off at full speed through Florence." Bennett saw Park drive over the centerline on the street in Florence before she lost sight of Park. Bennett came upon the accident shortly thereafter.

¶6 Park agreed to provide a blood sample after the accident. The sample indicated the presence of 0.18 MG/L of hydrocodone, a schedule II drug that affects a person's ability safely to operate a motor vehicle. The crime lab informed the State that 0.20 MG/L constitutes a lethal concentration for most people. Park voluntarily admitted shortly after the accident that she had been using a lot of medication, but that she did not take her medications when she would be driving. Medical records show that doctors had ordered Park not to drive until after she knew how hydrocodone and the other newly prescribed medications would affect her.

¶7 Zawada suffered traumatic injuries as a result of the collision with Park and doctors pronounced her dead after arriving at the hospital. The State charged Park with felony negligent homicide. Park originally entered a plea of "not guilty," but she later moved to vacate her scheduled trial and withdraw her plea. Park eventually entered a plea of nolo contendere and waived her rights. The court accepted Park's plea and found her guilty. The court ordered preparation of a presentence investigation (PSI) report.

¶8 The PSI revealed that Park suffered from various physical and emotional problems at the time of the offense. Park grew up with an alcoholic father who beat her on a regular basis. Park's parents eventually divorced with her mother remarrying. Park's mother later

3

severed her relationship with Park. Before the accident, Park had been injured at work. This injury resulted in Park suffering from continuous physical pain. Park's medical providers attempted to control these problems with a host of powerful drugs. Park's pain medications included hydrocodone and oxycontin, the pain and muscle relaxant, carisoprodol (soma), and an antidepressant, amitriptyline. Park's prescription medication induced "black out" led to the collision and death of Zawada. Park's only recollection of the collision is witnessing the blazer roll.

¶9 Park was admitted to St. Patrick's Hospital/Providence Center, a substance abuse and mental health treatment facility, immediately following the collision. Park spent three weeks in a residential treatment program. Park followed her residential treatment program with intensive outpatient psychological and medical treatment. Park's therapist diagnosed her with "major depressive disorder" manifested by "impaired sleep, appetite, concentration and decreased short term memory." The therapist recommended continued treatment in the future including psychological testing and related treatment and treatment with medication for Park's anxiety and depressed mood.

¶10 The court considered the documents on file, including the PSI and various statements made by Park and her counsel, in making its sentencing determination. The court recognized that Park had no prior criminal history. Park had reported only moderate alcohol use despite medical evidence to the contrary. The court concluded that Park should not drink alcohol, at least as long as her medical and psychological problems persisted and she remained under active treatment. The court sentenced Park to the DOC for five years and placed Park in a

pre-release program on August 14, 2002. The court suspended Park's sentence based on certain terms and conditions.

¶11 The condition relevant to this appeal provides that Park "shall not drink or possess any alcoholic beverages." The court also required Park to submit to drug and alcohol testing. Park affirmatively agreed to the no alcohol and drug testing conditions. The DOC later recommended that Park be placed in an Intensive Supervision Probation (ISP) program as her mental health issues prohibited her placement in a pre-release program. Park completed the ISP and was placed on standard probation on May 22, 2003.

¶12 The State petitioned to revoke Park's suspended sentence on July 25, 2007. The State submitted a report of violations that included two infractions. Park first attempted to disguise her alcohol consumption by submitting toilet water as her urine sample on February 6, 2007. Park later admitted, when confronted by the probation officer, that she had consumed alcohol. Park's second violation occurred on July 20, 2007, when law enforcement officers found Park in an extremely intoxicated state crawling through the bushes in a parking lot in Stevensville. Park agreed to a breathalyzer that revealed a blood alcohol content of 0.128.

¶13 The DOC recommended an adjustment to Park's sentence to add three years to her suspended sentence. Park moved to dismiss the petition for revocation. The court denied the motion. Park later admitted to the violations contained in the State's petition to revoke. The court accepted Park's admissions and found her in violation of her probation. The court re-sentenced Park to a five year suspended sentence to the DOC. The court re-affirmed the

same terms and conditions contained in the original judgment and included one additional condition. The court ordered Park to obtain a chemical dependency evaluation and follow the evaluation recommendations. Park appeals.

## STANDARD OF REVIEW

¶14 We adopted a dual standard of review in cases challenging the legality and/or propriety of probation conditions. *State v. Corbin*, 2008 MT 146, ¶ 4, 343 Mont. 211, ¶ 4, 184 P.3d 287, ¶ 4 (citations omitted). We review de novo the legality of a sentencing condition. *Corbin*, ¶ 4. We review the reasonableness of the challenged condition to determine whether the sentencing court abused its discretion. *Corbin*, ¶ 4.

## DISCUSSION

¶15 *Whether the district court imposed an illegal alcohol condition as part of Park's original suspended sentence.*

¶16 Park challenges the condition imposed by the district court that she "not drink or possess any alcoholic beverages" and that she "not use any illegal drugs." Park argues that the condition is illegal, and not merely objectionable, as it falls outside the statutory parameters. Park further argues that the alcohol restriction has no nexus to either the offense or herself. Park contends that nothing in the record indicates that she had any issues with alcohol at the time of the original sentence.

¶17 The State raises the threshold issue of whether Park's failure to raise the issue at the time of her original sentencing bars Park from raising this argument on appeal. Park concedes that she did not challenge the no alcohol condition at the time of her original

6

sentence. We generally refuse to review on appeal an issue to which a party failed to object at the trial court. *State v. Kirkland*, 2008 MT 107, ¶ 8, 342 Mont. 365, ¶ 8, 181 P.3d 616, ¶ 8.

¶18 Park cites *State v. Lenihan*, 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979), however, for the proposition that she may raise this issue for the first time on appeal. *Lenihan* carved out an exception to the general rule by allowing appellate review of an allegedly illegal sentence even when the defendant raised no objection to the sentence at trial. Park attempts to distinguish our decision in *State v. Walker*, 2007 MT 205, ¶ 18, 338 Mont. 529, ¶ 18, 167 P.3d 879, ¶ 18, where we refused to apply the *Lenihan* rule, on the basis that she did not "actively acquiesce" to the original sentence or participate in the imposition of a condition prohibiting her use of alcohol.

¶19 We consistently have held that a sentence is not illegal if it falls within statutory parameters. *State v. Kotwicki*, 2007 MT 17, ¶ 13, 335 Mont. 344, ¶ 13, 151 P.3d 892, ¶ 13. Section 46-18-201(4)(o), MCA, allows for a sentencing judge, on deferral of a sentence, to impose upon an offender any reasonable restrictions or conditions during the period of the deferred imposition or suspension of sentence. These conditions include any other reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society. We also have determined that a sentencing court's failure to abide by a statutory requirement rises to an objectionable sentence, not necessarily an illegal one that would invoke the *Lenihan* exception. *Kotwicki*, ¶ 13.

7

¶20    We upheld conditions of probation in *State v. Ashby*, 2008 MT 83, ¶ 15, 342 Mont. 187, ¶ 15, 179 P.3d 1164, ¶ 15, so long as the condition has a nexus either to the offense for which the offender is being sentenced, or to the offender himself or herself.  We cautioned though that an offender-related condition may be imposed only when the history or pattern of conduct to be restricted is recent, and significant, or chronic.  *Ashby*, ¶ 15.  We reaffirmed, however, that we will not put a district court in error on the basis of objections raised for the first time on appeal.  *Ashby*, ¶ 22.  We warned in *Ashby* that a defendant's failure to object to an improper condition at or before sentencing "may result in a waiver."  *Ashby*, ¶ 22.

¶21    More recently, in *State v. Stiles*, 2008 MT 390, 347 Mont. 95, ___, P.3d. ___, the defendant failed to object to conditions imposed for his suspended sentence at the trial court. We refused to consider his arguments as to whether a nexus existed between his offense, himself, and the conditions imposed.  *Stiles*, ¶ 14.  We likewise refuse to consider Park's argument that no nexus existed between the alcohol restriction, or her offense, or her background.  *Stiles*, ¶ 14.

¶22    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ JOHN WARNER

Justice Jim Rice, concurring.

¶23 I concur with the Court's holding under a different rationale. The conditions challenged by Park were imposed when she was originally sentenced in 2002. She did not appeal the imposition of the conditions at that time, challenging them only after the revocation proceeding was initiated in 2007. Consequently, she "is precluded from now challenging the legality of the conditions therein imposed. . . ." *State v. Muhammad*, 2002 MT 47, ¶ 22, 309 Mont. 1, ¶ 22, 43 P.3d 318, ¶ 22.

/S/ JIM RICE

9