DA 07-0248

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 37

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ERIN CLYDE BULLMAN,

      Defendant and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Eleventh Judicial District,<br>In and For the County of Flathead, Cause No. DC 06-112(B)<br>Honorable Katherine R. Curtis, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            Jim Wheelis, Chief Appellate Defender; Shannon McDonald, Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Hon. Steve Bullock, Montana Attorney General; Tammy K. Plubell, Assistant Attorney General, Helena, Montana

            Ed Corrigan, Flathead County Attorney, Kalispell, Montana

                      Submitted on Briefs: February 20, 2008

                              Decided: February 18, 2009

Filed:

_____
               Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Erin Bullman was found guilty by a jury of the offenses of incest and sexual assault committed against his stepdaughter, J.T. The District Court sentenced Bullman to serve concurrent sentences of 40 years at Montana State Prison, with the last 20 years suspended. The District Court also ordered that he shall not be eligible for parole until he has completed Phase I and Phase II of the prison's sexual offender treatment program and that on any parole or probation he shall abide by listed conditions. Bullman appeals his conviction and sentence on numerous grounds. We restate the issues as follows:

¶2     1. Did the State introduce sufficient evidence that Bullman was married by common law to J.T.'s mother so that he could be convicted of incest?

¶3     2. Did the District Court commit plain error in its instruction to the jury concerning what is necessary to find that a common law marriage existed?

¶4     3. Did the District Court err in not instructing the jury to disregard a portion of J.T.'s testimony?

¶5     4. Did the District Court err in restricting Bullman's eligibility for parole?

¶6     5. Did the District Court err in imposing conditions on Bullman's parole?

¶7     6. Did the District Court err in imposing conditions on Bullman's suspended sentence?

¶8     7. Did the District Court sentence Bullman more harshly because he did not admit guilt?

¶9     8. Did the District Court err in imposing restitution?

## BACKGROUND

¶10     Bullman lived with J.T.'s mother and their children as a family for seven years in Kalispell. J.T. is the child of a previous relationship of her mother. Bullman and J.T.'s mother have three children. Bullman provided for the household's support. For the last four years of their relationship, J.T.'s mother did not work outside of the home.

¶11     Bullman testified that he had been engaged to be married to J.T.'s mother since 2002, but they had not married. Bullman testified that he did not call J.T.'s mother his wife, but that they referred to each other as Lord and Lady and that he identified her as "my Lady." J.T.'s mother testified that they lived together "as husband and wife." She said she rarely called Bullman her husband, although Bullman sometimes called her his wife.

¶12     Bullman said he purchased a house and J.T.'s mother's name was on the deed. Bullman testified that prior to 2005 he filed his tax returns as single and so did J.T.'s mother. Bullman did not claim J.T. as a dependant when filing his taxes. He did sometimes claim one or more of the other children as dependants on his tax returns. Utilizing Bullman's power of attorney, J.T.'s mother filed tax returns jointly with Bullman for the 2005 and 2006 tax years when Bullman was incarcerated. J.T.'s mother filed for and was granted a dissolution of her marriage to Bullman in October 2006. The record reflects Bullman submitted an objection to the validity of the marriage to the Clerk of the District Court, but it was not filed because he did not attach a certificate of service.

¶13     J.T. told her biological father that Bullman sexually abused her. Her biological father contacted law enforcement. J.T. testified that Bullman sexually molested her for

approximately three years and five months, beginning when she was nearly ten years old. She testified that the first instance of abuse took place in a tent in their backyard and that thereafter the abuse took place continuously, once or twice a week, in various locations within the two houses they lived in, including the bathrooms, J.T.'s bedroom, Bullman's bedroom, and the living room. She said Bullman abused her when her mother was asleep or in another room, usually in the evening or in the morning before Bullman left for work and J.T. left for school.

## STANDARDS OF REVIEW

¶14 In a criminal case, a motion for dismissal for insufficiency of the evidence under § 46-16-403, MCA, is only appropriate if, viewing the evidence in a light most favorable to the prosecution, no evidence exists upon which a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *State v. Bomar*, 2008 MT 91, ¶ 13, 342 Mont. 281, 182 P.3d 49; *State v. Swann*, 2007 MT 126, ¶ 16, 337 Mont. 326, 160 P.3d 511. We review a district court's denial of such a motion de novo, because evidence is either sufficient or it is not. *Swann*, ¶¶ 16-19. When considering the sufficiency of the evidence, we will not substitute our judgment for that of the trier of fact, because the trier of fact views the evidence firsthand, observes the demeanor of the witnesses, and weighs the credibility of each party. *State v. Maetche*, 2008 MT 184, ¶ 14, 343 Mont. 464, 185 P.3d 980; *State v. Shields*, 2005 MT 249, ¶ 20, 328 Mont. 509, 122 P.3d 421.

¶15 We review jury instructions to determine whether the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case. *State v. Dasen*, 2007 MT 87, ¶ 34, 337 Mont. 74, 155 P.3d 1282.

¶16 We first review conditions of probation in a sentence for legality. Then, because sentencing statutes authorize sentencing judges to impose conditions on deferred or suspended sentences that constitute "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society," § 46-18-201(4), MCA, the reasonableness of such conditions will be reviewed for an abuse of discretion. *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164.

DISCUSSION

¶17 *1. Did the State introduce sufficient evidence that Bullman was married by common law to J.T.'s mother so that he could be convicted of incest?*

¶18 Section 45-5-507, MCA, provides that a person commits the offense of incest if he knowingly has sexual intercourse with, or has sexual contact with, a stepdaughter. Bullman argues that the State did not present sufficient evidence to prove that he was married to J.T.'s mother, so J.T. was not his stepdaughter. Thus, he cannot be guilty of incest. The State contends that it presented sufficient evidence for the jury to find that Bullman and J.T.'s mother were married at common law and therefore the conviction of incest is lawful.

¶19 Montana recognizes common law marriage. Section 40-1-403, MCA. To establish a common law marriage, the party asserting the existence of the marriage must prove that: (1) the parties were competent to enter into a marriage; (2) the parties assumed a marital

relationship by mutual consent and agreement; and (3) the parties confirmed their marriage by cohabitation and public repute. *In re Estate of Ober*, 2003 MT 7, ¶ 9, 314 Mont. 20, 62 P.3d 1114 (citing *Matter of Estate of Hunsaker,* 1998 MT 279, ¶ 32, 291 Mont. 412, 968 P.2d 281).

¶20 Bullman contends that the evidence is insufficient for a reasonable trier of fact to conclude he was married to J.T.'s mother as they did not mutually consent to the marriage and they did not hold themselves out to the public as husband and wife. He asserts that the only evidence of a common law marriage introduced by the state is tax returns filed jointly after Bullman was incarcerated, a divorce decree filed over his objection, and the testimony of J.T.'s mother that Bullman sometimes called her his wife.

¶21 The evidence that Bullman and J.T.'s mother were married at common law is circumstantial. Circumstantial evidence is that which tends to establish a fact by proving another and which, though true, does not of itself conclusively establish that fact but affords an inference or presumption of its existence. Section 26-1-102(1), MCA. When circumstantial evidence is susceptible to two reasonable interpretations, one which supports guilt and the other which supports innocence, the trier of fact determines which interpretation is most reasonable. *State v. Rosling*, 2008 MT 62, ¶ 36, 342 Mont. 1, 180 P.3d 1102; *State v. Hall*, 1999 MT 297, ¶ 22, 297 Mont. 111, 991 P.2d 929. Circumstantial evidence alone may be sufficient to obtain a conviction. *State v. Southern*, 1999 MT 94, ¶ 92, 294 Mont. 225, 980 P.2d 3; *State v. Vukasin*, 2003 MT 230, ¶ 20, 317 Mont. 204, 75 P.3d 1284. Circumstantial evidence must only be of such a quality and quantity as to legally justify a

jury in determining guilt beyond a reasonable doubt, and all facts and circumstances must be considered collectively. *Rosling*, ¶ 36; *Southern*, ¶ 92.

¶22    The facts that Bullman lived with J.T.'s mother as husband and wife for years, they had children together, he supported her and the children including J.T., and that he purchased a house and J.T.'s mother was "on the deed," are circumstances that, when viewed in a light most favorable to the prosecution, tend to support the conclusion that the couple mutually consented and agreed to a marital relationship. While Bullman testified he was not married, the testimony of J.T.'s mother that he sometimes called her his wife in front of others, if believed, is a circumstance that strongly tends to establish mutual consent and agreement to a marriage, and that the couple held themselves out as married. J.T.'s testimony that Bullman assumed a father-daughter relationship with her and asked her to call him "dad' is a circumstance that tends to prove that he consented to a marriage with her mother.

¶23    There is, as Bullman contends, evidence in the record indicating he did not consent to a marriage. However, the jury weighed the testimony and the credibility of the witnesses and determined there was sufficient evidence to find that Bullman and J.T.'s mother were married. Viewing the evidence in the light most favorable to the prosecution, we conclude the record contains sufficient evidence for the jury to conclude Bullman and J.T.'s mother were married at the time the sexual contact occurred.

¶24    *2. Did the District Court commit plain error in its instruction to the jury concerning what is necessary to find that a common law marriage existed?*

¶25 Bullman contends that the jury instruction given on the elements of common law marriage contains a mistake of law. The pertinent part of this instruction reads:

> Four elements must be proved to establish a common law marriage: One, the parties must be competent to marry; two, the parties must assume the relationship by mutual consent; three, the parties must confirm their marriage by cohabitation; and, four, the parties must confirm their marriage by public repute.

¶26 Bullman offered this instruction, which was given by the District Court. He now asks this Court to determine the giving of the instruction was plain error. Under the plain error doctrine, this Court may discretionarily review claimed errors that implicate a criminal defendant's fundamental constitutional rights, even if no contemporaneous objection is made, where failing to review the claimed error may result in a manifest miscarriage of justice; leave unsettled the question of the fundamental fairness of the trial or proceedings; or compromise the integrity of the judicial process. *Dasen*, ¶ 38.

¶27 Bullman asserts that element two in the instruction is plain error as it only requires the couple be in a relationship, while the law requires an agreement that they are, in fact, married. However, the instruction, considered in its entirety, sufficiently states the couple must assume the relationship of marriage by agreement. We conclude that giving this instruction did not result in a manifest miscarriage of justice; leave unsettled the question of the fundamental fairness of the trial or proceedings; or compromise the integrity of the judicial process. We will not reverse the judgment based on plain error.

¶28 *3. Did the District Court err in not instructing the jury to disregard a portion of J.T.'s testimony?*

8

¶29 On the morning of the second day of the trial, J.T. testified Bullman had sexual contact with her numerous times in the evening at the family home on Bernard Street in Kalispell. There was no objection to this testimony. That afternoon, in an attempt to attack her credibility, Bullman's counsel cross-examined J.T. about these instances, pointing out to her that they were not included in her prior statements to law enforcement and forcing her to admit that she had just recently remembered them. After J.T. had finished testifying, Bullman's counsel moved the Court to instruct the jury to disregard such testimony because it was not previously disclosed. Noting that the instances described were within the time frame when the alleged abuse occurred, and that Bullman had access to J.T. to ask her any details the defense desired, the District Court denied the motion.

¶30 Bullman now claims on appeal that the judgment must be reversed because the District Court declined to instruct the jury to disregard testimony that was not previously disclosed to the defense.

¶31 The charging documents informed Bullman he was charged with having sexual contact with J.T. during the time frame of the incidents she testified to. The State provided him with all the information it had concerning the alleged sexual abuse, and he had the opportunity to question J.T. prior to trial concerning any details. When J.T. expanded on her statements at trial, without objection by Bullman, he attacked her credibility using her prior statements, albeit unsuccessfully. If Bullman wished to exclude testimony of specific instances of conduct, he was required to object to the admission of such evidence in a timely fashion, stating the specific grounds for such objection. M. R. Evid. 103(a)(1). He made no

9

contemporaneous objection to the testimony and then waited until after his cross-examination was complete to move for a ruling excluding it from consideration. The objection was not timely and was waived. *State v. McWilliams*, 2008 MT 59, ¶ 45, 341 Mont. 517, 178 P.3d 121; *State v. Misner*, 2007 MT 235, ¶ 24, 339 Mont. 176, 168 P.3d 679. Thus, we need not reach the question of whether this testimony of J.T. was admitted in error.

¶32    *4. Did the District Court err in restricting Bullman's eligibility for parole?*

¶33    Bullman asserts the District Court imposed an illegal sentence by conditioning his eligibility for parole on completion of phases I and II of the sex offender treatment program offered at Montana State Prison. Section 46-18-202(2), MCA, provides in pertinent part:

> Whenever the sentencing judge imposes a sentence of imprisonment in a state prison for a term exceeding 1 year, the sentencing judge may also impose the restriction that the offender is ineligible for parole and participation in the supervised release program while serving that term . . . .

¶34    In *State v. Kirkbride*, 2008 MT 178, ¶ 18, 343 Mont. 409, 185 P.3d 340, we held that § 46-18-202(2), MCA, not only allows the sentencing court to restrict parole for the entire term of a sentence but also allows a district court to restrict parole for a portion of the sentence imposed. *Kirkbride*, ¶ 18. The restriction imposed upon Bullman's eligibility for parole is likewise for a portion of the sentence imposed. We conclude the condition that Bullman not be eligible for parole until completing phases I and II of the sex offender treatment program is within the authority granted to a sentencing judge by § 46-18-202(2), MCA, and does not render the sentence illegal. *Cf. State v. Larson*, 266 Mont. 28, 31, 33, 878 P.2d 886, 888-89 (1994).

10

¶35 *5. Did the District Court err in imposing conditions on Bullman's parole?*

¶36 The judgment of the District Court imposes conditions on "parole and probation." Bullman asserts the District Court's imposition of conditions on parole is illegal. He is correct that a district court does not generally have authority to impose conditions upon a parole which is granted by the Board of Pardons and Parole (Board). *State v. Burch*, 2008 MT 118, ¶¶ 26-30, 342 Mont. 499, 182 P.3d 66.

¶37 Sentencing judges do have authority to impose some parole restrictions. Section 46-18-255, MCA, provides:

> (1) A judge sentencing a person upon conviction of a sexual or violent offense shall, as a condition to probation, parole, or deferment or suspension of sentence, impose upon the defendant reasonable employment or occupational prohibitions and restrictions designed to protect the class or classes of persons containing the likely victims of further offenses by the defendant.
> (2) In addition to any restriction on employment imposed under subsection (1), a judge sentencing a person convicted of a sexual offense involving a minor and designated as a level 3 offender under 46-23-509 shall, as a condition to probation, parole, or deferment or suspension of sentence, impose upon the defendant restrictions on the defendant's residency in the proximity of a private or public elementary or high school, preschool as defined in 20-5-402, licensed day-care center, church, or park maintained by a city, town, or county.

¶38 Conditions 1e, 29, and 30, which the District Court imposed on any grant of parole, are employment restrictions designed to protect likely victims of further offenses by the defendant. The District Court is specifically authorized by § 46-18-255(1), MCA, to impose these conditions on Bullman's parole. We conclude that these restrictions are not unreasonable.

11

¶39 For some undisclosed reason, the District Court did not designate Bullman as a level 1, 2, or 3 sexual offender as required by § 46-23-509(3)(b), MCA. Thus, this Court is unable to conclude that the remaining restrictions on Bullman's parole are legally imposed under § 46-18-255(2), MCA, and they must be stricken. If Bullman is granted parole, it is the Board that must impose any further conditions.

¶40 6. *Did the District Court err in imposing conditions on Bullman's suspended sentence?*

¶41 Bullman argues on appeal that the District Court erred in imposing conditions on the suspended portion of his sentence which require him to undergo a chemical dependency evaluation, attend A.A./N.A./G.A. meetings, complete anger management and prohibit him from consuming intoxicants and frequenting bars or other businesses where alcohol is the chief item of sale. Imposition of these conditions is within the District Court's discretion if they have a nexus either to the offense for which Bullman is sentenced or to Bullman himself. *Ashby*, ¶ 15. However, Bullman made no objection to these conditions in the District Court. Failure to object to an improper condition at or before sentencing results in a waiver of the right to object to that condition for the first time on appeal. *State v. Park*, 2008 MT 429, ¶¶ 20-21, 347 Mont. 462, 198 P.3d 321; *State v. Baker*, 2008 MT 396, ¶ 11, 347 Mont. 159, 197 P.3d 1001; *State v. Stiles,* 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. Bullman has waived his objections to the imposition of these conditions on his suspended sentence.

¶42    Bullman did object in the District Court to condition 33 imposed on his suspended sentence. He renews his objection on appeal. This condition reads:

> The defendant may have no contact with the victim in this case . . . or her family, including her siblings, by any means, including written, telephone, electronic device, or by a third party or in person, without prior approval from his sex offender therapist (while Defendant is still at MSP) and supervising officer (once he is released) after consultation with the treatment provider and the child(ren)'s counselors if applicable.

¶43    We review this condition for its reasonableness under § 46-18-201(4), MCA. *Ashby*, ¶ 9. In order for the condition to be reasonable, it must have a nexus to the offender or the offense. *Ashby*, ¶¶ 14-15.

¶44    Bullman was convicted of sexual assault and incest upon his stepdaughter. Bullman chose the victim from within his immediate family. There is a nexus between the offenses committed and the probation condition imposed. The condition is not an absolute prohibition on Bullman's contact with J.T. or J.T.'s siblings. We conclude that the required nexus is present and the District Court did not abuse its discretion in imposing condition 33 on Bullman's suspended sentence.

¶45    *7. Did the District Court sentence Bullman more harshly because he did not admit guilt?*

¶46    Bullman has consistently denied he is guilty of the charged offenses. Relying on *State v. Imlay*, 249 Mont. 82, 813 P.2d 979 (1991), where this Court vacated a sentence imposed because the defendant did not admit his guilt, Bullman claims that the District Court imposed a prison sentence only because he has chosen to exercise his constitutional right to remain silent.

13

¶47 Bullman participated in a sex offender evaluation with Dr. Michael Scolatti. Dr. Scolatti's report to the District Court stated that, since Bullman did not admit his offense, he was not an appropriate candidate for outpatient therapy. Dr. Scolatti went on to opine that if Bullman had admitted his guilt he could have been a candidate for community-based treatment. The District Court acknowledged Dr. Scolatti's opinion that Bullman was not an appropriate candidate for community-based treatment.

¶48 The Fifth Amendment to the United States Constitution and Article II, § 25 of the Montana Constitution provide defendants with the right to remain silent and not incriminate themselves in criminal proceedings. District courts are prohibited from augmenting a defendant's sentence because the defendant refuses to admit a crime or invokes his privilege against self-incrimination. *State v. Duncan*, 2008 MT 148, ¶ 52, 343 Mont. 220, 183 P.3d 111 (citing *Imlay*, 249 Mont. at 91, 813 P.2d at 985).

¶49 Because the opinion of Dr. Scolatti is in the record, Bullman argues that the sole reason the trial judge sentenced him to prison was that he exercised his right to remain silent by not admitting his guilt. However, the District Court stated that Bullman's sentence is not based upon consideration of his maintaining his innocence. The District Court also articulated the reasons for imposing a prison sentence which include:

> [T]he nature of his offenses; the Forensic Report submitted by Dr. Michael Scolatti, including his conclusion that the Defendant is not amenable to treatment in the community, and his recommended conditions of parole; the victim impact letters . . . evidencing the significant and wide-spread harm caused by the Defendant's conduct; the need to protect society and ensure that the Defendant receive appropriate treatment; the character letters submitted by the Defendant; the Defendant's prior criminal history, his long history of substance abuse and his ability to maintain employment and make payments

14

toward his court-ordered financial obligations; the recommendations of the parties; and the Pre-Sentence Investigation prepared by . . . the Adult Probation and Parole office.

¶50    The record in this case reflects the District Court's careful consideration of many relevant factors in sentencing Bullman. These include the significant impact of the crime on J.T. and the need to protect society. The District Court also considered Bullman's need for treatment, his criminal history, and his long history of substance abuse, as well as Dr. Scolatti's opinion of Bullman's suitability for community-based treatment. The record also affirmatively shows the District Court was well aware of the prohibition against sentencing a defendant to prison because he does not admit guilt. Under these circumstances, we cannot conclude that the District Court sentenced Bullman more harshly because he did not admit the charged offenses. *See State v. Burkhart*, 2004 MT 372, ¶¶ 60-61, 325 Mont. 27, 103 P.3d 1037.

¶51    *8. Did the District Court err in imposing restitution?*

¶52    Section 46-18-243(1)(c), MCA, allows a district court to order restitution for "future medical expenses that the victim can reasonably be expected to incur as a result of the offender's criminal conduct, including the cost of psychological counseling, therapy, and treatment." However, § 46-18-244, MCA, requires the court "specify the total amount of restitution that the offender shall pay." The State concedes that because the District Court did not fix the amount of restitution owed, the restitution requirement must be stricken.

CONCLUSION

¶53 Bullman's conviction is affirmed. This case is remanded to the District Court with instructions to strike conditions on Bullman's parole other than conditions 1e, 29, and 30; and to strike the requirement of restitution. The remainder of the sentence is affirmed.

/S/ JOHN WARNER

We Concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE