DA 10-0060

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 42

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

BARRY K. HOLT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DC 09-06
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Eileen A. Larkin, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Sheri K. Sprigg,
          Assistant Attorney General, Helena, Montana

          Alex Nixon, Carbon County Attorney, Red Lodge, Montana

          Submitted on Briefs:  December 22, 2010

                    Decided:  March 11, 2011

Filed:

                           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Barry Holt appeals from his sentence following his guilty plea to a charge of burglary under § 45-6-204, MCA. We affirm in part, reverse in part, and remand for limited resentencing.

## BACKGROUND

¶2    In the early morning hours of November 12, 2006, Holt looked into the windows of a house and saw a 12-year-old girl asleep. He entered the house, went into the girl's bedroom, and tried to pull down her pants. The State charged Holt with burglary and attempted sexual assault and trial on those charges commenced in July, 2009. After completing the first day of trial, Holt and the State reached a plea agreement in which Holt agreed to plead guilty to burglary. The State agreed to dismiss the charge of attempted sexual assault and to withdraw its request that Holt be designated a persistent felony offender. The parties agreed to recommend a ten-year sentence to the Montana State Prison with no parole restrictions, to run concurrently with the sentence imposed in a separate case against Holt in which he was charged with failure to register as a sex offender. Holt's attorney explained the agreement:

> Our understanding of the agreement is that Mr. Holt will plead guilty in this matter, DC 09-06, to burglary. And he will admit in his allocution that he entered the [M] residence without permission with the intent to commit misdemeanor assault by touching [K. M.] in a provoking or insulting manner.

2

At the change-of-plea hearing Holt testified that he entered the residence without permission with the intent to commit an assault against the victim K. M. Holt entered a guilty plea to the burglary charge and the District Court accepted the changed plea.

¶3 In 1992 Holt was convicted of sexual battery of a minor in Louisiana. Like the 2006 incident in Montana, the Louisiana offense involved Holt's entering a house and touching a young girl. Holt moved to Montana in 1998 and lived under the alias of Jack White until he was arrested for the burglary and attempted sexual assault charges in 2006. He never registered as a sex offender after moving to Montana as required by § 46-23-504(1)(c), MCA. The State charged him with failure to register, and he was found guilty after a bench trial. In June, 2009, the District Court ordered a psychosexual evaluation.

¶4 In November, 2009, the District Court conducted a sentencing hearing on both the burglary conviction and the conviction for failure to register. The District Court first considered the burglary conviction and informed the parties that it intended to depart from the plea agreement because the psychosexual evaluation indicated that Holt was a high risk to re-offend and that he should be designated as Level III sex offender. The District Court therefore determined that Holt should be required to complete sex offender treatment in prison as a condition of parole eligibility. Since this was a deviation from the plea agreement in which the parties had agreed that there would be no restrictions on parole eligibility, the District Court gave Holt the opportunity to withdraw his guilty plea to burglary. Holt declined to withdraw the guilty plea to the burglary and expressed his desire to continue with the sentencing. Accordingly, the District Court sentenced Holt to ten years at the Montana State Prison for the burglary conviction in accordance with the

3

plea agreement. The District Court also designated Holt as a Level III sex offender and conditioned parole eligibility on the burglary sentence upon completion of sex offender treatment.

¶5 The District Court then sentenced Holt to five years at Montana State Prison on the conviction for failure to register as a sex offender, to run concurrently with the burglary sentence. The District Court's sentence for failure to register also designated Holt as a Level III sex offender and conditioned release upon completion of sex offender treatment.

¶6 On appeal, Holt contends that it was illegal for the District Court to designate him a Level III sex offender or to condition parole eligibility for the burglary conviction upon completion of sex offender treatment. Holt does not appeal the Level III sexual offender designation or the sex offender treatment condition imposed in the sentence for the failure to register as a sex offender.

## STANDARD OF REVIEW

¶7 This Court generally reviews a criminal sentence longer than one year for legality only; that is, whether it falls within the statutory parameters. *State v. Hernandez,* 2009 MT 341, ¶ 3, 353 Mont. 111, 220 P.3d 25. We review the reasonableness of conditions or restrictions imposed in a sentence under § 46-18-202, MCA, for abuse of discretion, if the conditions are objected to at sentencing. *Id*.; *State v. Hafner,* 2010 MT 233, ¶ 13, 358 Mont. 137, 243 P.3d 435.

## DISCUSSION

¶8 Holt pled guilty to burglary which is defined by statute:

4

A person commits the offense of burglary if the person knowingly enters or remains unlawfully in an occupied structure and:

(a) the person has the purpose to commit an offense in the occupied structure; or

(b) the person knowingly or purposely commits any other offense within that structure.

Section 45-6-204(1), MCA. In this case, the other offense that Holt committed or intended to commit during the burglary was an assault on a minor female. Holt and his attorney represented to the District Court that Holt "entered the [M] residence without permission with the intent to commit misdemeanor assault by touching [K. M.] in a provoking or insulting manner."

¶9 The District Court made the following findings at the November 24, 2009 sentencing hearing:

Now, let me say this then, because there's additional concern, I have the presentence report prepared by the Department of Corrections together with this psychosexual evaluation conducted by Dr. Bakko in this matter.

Based upon that information, the defendant is going—there would be evidence to suggest that the defendant should be designated a risk Level III, which is the highest level risk to sexually re-offend. Because of that, the Court is going to require as a prior condition of parole, that the defendant undergo sex offender treatment Phases I and II before being eligible for parole.

.   .   .

But the psychosexual evaluation, frankly, leaves me no alternative, in my mind, in protecting the community but to require that treatment as a necessary part of the sentence in this case.

.   .   .

All right. As the Court has indicated on the record, it is going to deviate from the plea agreement in one respect and that's related to the requirement for the sexual offender treatment.

5

. . .

I'll have to say that the psychosexual evaluation that the Court has received gives me great pause in this case. There's been a number of previous instances, as far as criminal conduct in the past, Mr. Holt, that makes the Court very concerned, especially if you remain untreated, that you will ever get a handle on the sexual problems that you have. And clearly, you have them. And, you know, for your own sake, at least, you need to enroll in and get as much out of these programs as you possibly can. I hope you will do that out of a sense of common decency and a desire to benefit yourself in some respects.

. . .

The statute also requires that the Court give reasons for any restrictions of parole eligibility. The reasons are that pursuant to the psychosexual evaluation, the defendant is the highest risk level to reoffend sexually. Therefore, there is a huge need for the defendant to undergo the sexual offender treatment Phases I and II in order to protect society. Frankly, if he doesn't undergo that treatment, there's little hope that the Court can protect society once he is out.

Moreover, the defendant's past criminal conduct would indicate that parole restriction based upon the need for treatment is wholly consistent with the protection of society and protecting future, innocent victims.

In addition, it's important that the defendant undergo this sexual offender treatment for his own rehabilitative purposes. So not only does this restriction serve to protect society, but it serves to provide some rehabilitative treatment for this defendant.

¶10 The record demonstrates that Holt acquiesced in and did not object to the sex offender treatment condition of his burglary sentence as it was explained by the District Court. Therefore, Holt cannot complain about that condition on appeal. A condition of a sentence is reviewed for reasonableness only if the defendant objects at the time of sentencing. *Hernandez*, ¶ 3.

¶11 As noted, Holt entered a guilty plea on the burglary charge, and was separately convicted after a bench trial of the failure to register charge. At the sentencing hearing the District Court first considered the sentence on the burglary charge. ("At this time the Court calls Cause No. DC 09-06.") The District Court and the parties first resolved Holt's prior pro se motion to withdraw the guilty plea to the burglary. Holt was questioned and withdrew the motion to withdraw the guilty plea so that they could "proceed with sentencing." The District Court then informed the parties of the conclusion that, based upon the psychosexual evaluation completed as part of the presentence investigation, Holt should be designated a Level III sex offender, and should be required to successfully complete sexual offender treatment prior to eligibility for parole. Otherwise the District Court intended to follow the plea agreement.

¶12 The District Court informed Holt that this deviation from the plea agreement provided him the opportunity to withdraw his guilty plea to the burglary charge. The Court stated: "So I've articulated that so the defendant can know that and if he wishes to withdraw his plea on that basis, I'm affording him that opportunity at this time. … So if that is not acceptable I need to know that right now." Holt's attorney did not request to withdraw the guilty plea and did not object to the imposition of the treatment condition. Holt's attorney stated that Holt understood that the wording of the condition—whether sex offender treatment were a condition of release or of a condition for parole eligibility—would affect how quickly he could enter treatment once in prison.

¶13 There followed an extended discussion of the wording of the sexual offender treatment condition that ultimately involved the District Court, a probation officer, Holt's

7

attorney, and Holt himself. Holt expressed his belief that the sex offender treatment condition was beneficial to him because it would lessen the chance of his being "shipped off to any county lockup with no treatment" instead of remaining in a larger facility like the Montana State Prison. Holt explained his understanding, based on information from other inmates at the Yellowstone County Detention Center, that he would be accepted into the treatment program and could complete it more quickly if the treatment were a condition of release, not a condition of parole.

¶14 After listening to arguments over whether the wording of the condition affected how quickly Holt could enter sex offender treatment, the District Court stated:

> So it would be my preference I'll just indicate that he will not be parole eligible until he's entered and completed Phases I and II of sexual offender treatment. That's what I anticipate doing. So the question for Mr. Holt is whether he wished to go forward with that understanding.
>
> The Defendant: Yes, your Honor.

There was then additional discussion on the issue of whether the wording of the treatment condition had any practical effect. At the end of that discussion Holt stated: "Yes, Your Honor. I'll bend on that and I'll say yes. Okay. I will go through the treatment. I want to have incentive to do it."

¶15 The District Court then stated once again:

> So I guess the question is, do we proceed under the basis that I'm going to indicate that he'll have to complete these [sex offender treatment] phases before he's eligible for parole. Do you wish to proceed [with sentencing] Mr. Holt?
>
> The Defendant: Yes, sir.

8

It is abundantly clear that Holt declined multiple opportunities to withdraw from the guilty plea agreement and that he agreed to imposition of the sexual offender treatment as a condition to the burglary charge.

¶16 Holt argues on appeal that he was confused at the time of sentencing and believed that the treatment condition would only apply to the conviction for failure to register as a sex offender. That contention is not supported by the record. The record demonstrates that the District Court considered the burglary sentence first; that Holt and his attorney knew that the discussion involved sex offender treatment for the burglary conviction; and that the District Court moved on to the separate sentence for failure to register only after the burglary sentence was announced and concluded.

¶17 Holt made no legal objection to the sex offender treatment at sentencing, which precludes appellate review of whether the condition was improper, unreasonable, or an abuse of discretion. *Hernandez*, ¶ 3; *State v. Kotwocki*, 2007 MT 17, ¶ 8, 335 Mont. 344, 151 P.3d 892; *State v. Ashby*, 2008 MT 83, ¶ 22, 342 Mont. 187, 179 P.3d 1164; *State v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. Moreover, Holt did not simply refrain from objecting, he affirmatively agreed to having the sex offender treatment condition placed in his sentence for burglary. "We will not put a district court in error for an action in which the appealing party acquiesced or actively participated." *State v. Micklon*, 2003 MT 45, ¶ 10, 314 Mont. 291, 65 P.3d 559 (defendant agreed to a condition during sentencing hearing). "Acquiescence in error takes away the right of objecting to it." Section 1-3-207, MCA.

9

¶18 Holt next argues that the District Court improperly imposed a condition that he register as a sexual offender as part of the burglary sentence. The District Court did not impose any registration requirement as part of the burglary sentence. The only reference to registration is in the District Court's list of *recommendations* "[s]hould the Defendant be released on parole. . . ." A district court may make recommendations to be considered by the Board of Pardons and Parole if parole is granted. *Heafner*, ¶ 6.

¶19 The registration requirement was actually only one of the District Court's recommendations in this case. The burglary sentence provided: "If the Defendant is convicted of a crime listed in § 46-23-502(9), MCA, he must register as a sex offender." This is nothing more than a true statement of the cited statute, which requires registration upon conviction of one of the listed crimes. Sections 46-23-503 and -504, MCA. It would be true whether or not the District Court recommended it. Holt was already subject to sex offender registration as a matter of law based upon his prior conviction in Louisiana, his failure to register upon moving to Montana, and his conviction for failure to register. The sentence was not invalidated in any way by the reference to the registration requirement.

¶20 Finally, Holt argues that the District Court improperly designated him as a Level III sex offender. He relies upon § 46-18-207, MCA, which he contends allows a court to designate a sexual offender level only upon sentencing for "a sexual offense as defined in 46-23-502. . . ." Since burglary is not a defined sexual offense, Holt argues that the District Court lacked the power to designate an offender level in connection with that offense. We agree.

10

¶21 Prior to sentencing a person convicted of a defined sexual offense, the district court must receive recommendations from the Department of Corrections or a sexual offender evaluator of the appropriate sexual offender level designation. Section 46-23-509(2), MCA. Upon sentencing, the district court must review that recommendation and other relevant material and designate the offender as Level I, II or III. Section 46-23-509(3), MCA. Since the burglary conviction under consideration was not a "sexual offense" as defined in § 46-23-502, MCA, the District Court should not have attached a sexual offender level designation to Holt as part of the sentence for burglary.

¶22 The sentence imposed by the District Court is affirmed except as to the Level III sex offender designation in the burglary sentence. This matter is hereby remanded to the District Court solely for the purpose of striking the Level III sex offender designation in the sentence for burglary.

/S/ MIKE MCGRATH

We concur:

/S/ BRIAN MORRIS
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JIM RICE

Justice James C. Nelson, concurring in part and dissenting in part.

¶23 I concur with the Court's conclusion that the District Court's *recommendation* to the parole board, that Holt be required to register as a sexual offender if granted parole, is legal. Opinion, ¶¶ 18-19. I also concur with the Court's conclusion that the Level 3 sexual offender designation in Holt's burglary sentence is illegal. Opinion, ¶¶ 20-21.

¶24 I dissent, however, from the Court's resolution of Holt's challenge to the sexual offender treatment condition on his parole eligibility. Opinion, ¶¶ 10-17. Holt challenges this condition as illegal; and for the reasons discussed below, I conclude that he is correct, as there is no statutory authority for it. I therefore would reverse and remand for resentencing. I dissent from our contrary decision.

## I. Whether Holt's Sentencing Claim May Be Reviewed on Appeal

¶25 At the outset, there is some question as to whether Holt preserved for appellate review his challenge to the parole-eligibility condition. As a general rule, a party may raise on appeal only those issues and claims that were properly preserved through timely objection in the trial court. *State v. West*, 2008 MT 338, ¶ 16, 346 Mont. 244, 194 P.3d 683. A review of the November 24, 2009 sentencing hearing transcript reveals that the District Court first sentenced Holt on the burglary conviction and then sentenced him on the failure-to-register conviction. The main discussion relating to the sexual offender treatment condition took place during the first half of the sentencing hearing. And, as the Court notes, Holt raised no objection to the condition at that time.

¶26 But there are certain other facts which militate against the conclusion that Holt waived this issue. First, the sexual offender treatment condition was not part of the plea

12

agreement. The District Court decided to add the condition only after receiving the psychosexual evaluation. Second, at the July 27, 2009 change-of-plea hearing, during the parties' verbal explanation of their plea agreement to the District Court, the State made the following representation:

> The only thing I would like to put on the record is that *for the failure to register conviction*, it is my understanding that he will undergo a psychosexual evaluation and the State at the time of sentencing will be asking that the defendant—that the Court order that the defendant follow all of those treatment recommendations *as part of his judgment in that case*. [Emphases added.]

Third, at the sentencing hearing, the court referred to these "previous discussions" in explaining why it had decided to impose a sexual offender treatment condition on Holt's sentence despite the fact that this condition had not been a part of the plea agreement. This certainly could lead one to understand that the court intended to place the condition on the *failure-to-register* sentence, as opposed to the *burglary* sentence, in accordance with the prosecutor's representation during the "previous discussions."

¶27 Given these facts, the lack of a contemporaneous objection to the sexual offender treatment condition is not as clear-cut as the Court implies. On the record before us, and as a purely factual matter, I am unwilling, as the Court does, to leap to the conclusion that Holt "acquiesced" in the imposition of the condition on his burglary sentence.

¶28 But more importantly, as a legal matter, I strenuously disagree with this Court's continuing policy of allowing the courts of this state to impose unauthorized sentences if a defendant "acquiesces" in the illegality. *See State v. Walker*, 2007 MT 205, ¶¶ 30-40, 338 Mont. 529, 167 P.3d 879 (Nelson & Warner, JJ., concurring in part and dissenting in

13

part); *State v. Clark*, 2008 MT 391, ¶¶ 45-47, 347 Mont. 113, 197 P.3d 977 (Nelson, J., specially concurring). This whole line of authority, which started with *State v. Micklon*, 2003 MT 45, 314 Mont. 291, 65 P.3d 559, is legally untenable, not to mention downright ridiculous.

¶29    It is one thing to acquiesce in an "error," which "takes away the right of objecting to it." Section 1-3-207, MCA. But it is quite another to acquiesce in an "illegality." The Court's acquiescence policy treats these as the same, but they are not. A party may acquiesce in a trial court's misapplication of the hearsay rules, or its provision of flawed instructions to the jury, or its reliance on misinformation when imposing sentence. But a party cannot acquiesce in a court's exercise of power that it does not have.

¶30    This much is clear from our statement, in case after case after case, that a court which lacks jurisdiction cannot acquire it by consent of the parties. *Stanley v. Lemire*, 2006 MT 304, ¶ 31, 334 Mont. 489, 148 P.3d 643.[1] The reason is that a court's jurisdiction—its power and authority to hear and decide the matter before it—is conferred "only by the Constitution or statutes adopted pursuant to the Constitution." *Stanley*, ¶¶ 30, 52; *accord Pena v. State*, 2004 MT 293, ¶ 21, 323 Mont. 347, 100 P.3d 154.

---

[1] *Accord In re Marriage of Miller*, 259 Mont. 424, 427, 856 P.2d 1378, 1380 (1993); *State v. Tweedy*, 277 Mont. 313, 315, 922 P.2d 1134, 1135 (1996); *In re Marriage of Skillen*, 1998 MT 43, ¶ 10, 287 Mont. 399, 956 P.2d 1; *State v. Boucher*, 2002 MT 114, ¶ 12, 309 Mont. 514, 48 P.3d 21; *Harris v. Smartt*, 2003 MT 135, ¶ 11, 316 Mont. 130, 68 P.3d 889; *Noonkester v. Mont. State Fund*, 2006 MT 169, ¶ 24, 332 Mont. 528, 140 P.3d 466; *Miller v. Eighteenth Jud. Dist. Court*, 2007 MT 149, ¶ 44, 337 Mont. 488, 162 P.3d 121; *Thompson v. State*, 2007 MT 185, ¶ 28, 338 Mont. 511, 167 P.3d 867; *Pinnow v. Mont. State Fund*, 2007 MT 332, ¶ 16, 340 Mont. 217, 172 P.3d 1273; *Indian Health Bd. of Billings v. Dept. of Labor & Indus.*, 2008 MT 48, ¶ 20, 341 Mont. 411, 177 P.3d 1029; *Davis v. State*, 2008 MT 226, ¶ 20, 344 Mont. 300, 187 P.3d 654; *BNSF Ry. Co. v. Cringle*, 2010 MT 290, ¶ 15, 359 Mont. 20, ___ P.3d ___.

¶31 Likewise, we have uniformly held that courts "do not have the power to impose a [criminal] sentence unless authorized by a specific grant of statutory authority." *State v. Burch*, 2008 MT 118, ¶ 23, 342 Mont. 499, 182 P.3d 66; *accord State v. White*, 2008 MT 464, ¶ 22, 348 Mont. 196, 199 P.3d 274; *State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, 133 P.3d 206; *State v. Ruiz*, 2005 MT 117, ¶ 12, 327 Mont. 109, 112 P.3d 1001; *Pena*, ¶ 24; *State v. Nelson*, 1998 MT 227, ¶ 24, 291 Mont. 15, 966 P.2d 133. Indeed, it is well established that a court's "authority to impose a criminal sentence is defined and constrained by statute" and that "[a] sentence not based on specific statutory authority is an illegal sentence." *White*, ¶ 22; *accord Hicks*, ¶ 41; *Ruiz*, ¶ 12; *Pena*, ¶ 24.

¶32 In *Pena*, we distinguished between an "error" in sentencing and an outright lack of "power" to impose a sentence. We said: "Whether a district court commits a statutory error in imposing a sentence must not be confused with the question of whether the court had the 'power' or 'capacity' to impose the sentence in the first instance. An error in sentencing does not divest a district court of subject matter jurisdiction over the case before it." *Pena*, ¶ 22.

¶33 The point is that this whole notion of "acquiescence" in illegal sentences is totally devoid of any legal foundation. To be sure, a defendant can "acquiesce" in an "error" committed in the process of imposing sentence, which generally means (absent plain error review) that he cannot obtain review of it on appeal. But there is no way that a defendant can "acquiesce" in a sentence which a court does not have legal authority to impose. A party can no more acquiesce in a court's exercise of nonexistent sentencing authority than a party can acquiesce in a court's exercise of nonexistent jurisdiction. This

15

principle is self-evident and irrefutable, and the Court does not even attempt to refute it. Rather, the Court simply ignores it.

¶34    In *State v. Evert*, 2004 MT 178, 322 Mont. 105, 93 P.3d 1254, the prosecutor, Evert (through counsel), and the district court all agreed to resentence Evert five years after his original, final, and legal sentence was pronounced—though the court lacked authority to do so.  In going forward with the patently illegal sentencing proceeding, the prosecutor candidly acknowledged on the record:

> "[B]y statute and by numerous rulings by the Supreme Court, . . . a district court judgment, once it has been passed, is basically set in stone.  However, it's always been my practice—and also been the practice of this Court— that if a Defendant who has previously been sentenced appears before either myself or you and shows good cause as to why his sentence should be amended, generally mitigated, we don't object to that.  *We don't hold firm to the technicalities of the statute or the Supreme Court rulings.*"

*Evert*, ¶ 6 (emphasis added).  Rightly, the *Evert* Court was appalled:

> The laws of the State of Montana are written to ensure that justice is served and the well-being of society and individuals is safe-guarded. Contrary to the County Attorney's pronouncement to the District Court that "we don't hold firm to the technicalities of the statute or the Supreme Court rulings," adherence to the legislative enactments and the decisions of this Court is not a matter of convenience or prosecutorial preference.  *No court or officer of the court has the prerogative of circumventing or modifying the procedures established by law.*

*Evert*, ¶ 19 (emphasis added).  We only promote such disregard for the "technicalities" of the law when we ignore the law ourselves and allow "acquiescence" in an illegal act to preclude appellate review.

¶35    In *State v. Lenihan*, 184 Mont. 338, 602 P.2d 997 (1979), this Court observed that "[t]he sentencing authority of a court exists solely by virtue of a statutory grant of power

16

and therefore cannot be exercised in any manner not specifically authorized." *Id.* at 342, 602 P.2d at 1000 (internal quotation marks omitted). We accordingly held that "an appellate court [may] review any sentence imposed in a criminal case, if it is alleged that such sentence is illegal or exceeds statutory mandates, *even if no objection is made at the time of sentencing.*" *Id.* at 343, 602 P.2d at 1000 (emphasis added); *accord West*, ¶ 19; *State v. Southwick*, 2007 MT 257, ¶¶ 21-23, 339 Mont. 281, 169 P.3d 698; *State v. Kotwicki*, 2007 MT 17, ¶ 18, 335 Mont. 344, 151 P.3d 892; *State v. Garrymore*, 2006 MT 245, ¶¶ 10-15, 334 Mont. 1, 145 P.3d 946.

¶36    For these reasons, the Court's assertion that Holt's supposed "acquiescence" in the sexual offender treatment condition precludes him from raising it on appeal is flat wrong. Opinion, ¶ 10. It is true that he may not challenge the "reasonableness" of the condition, Opinion, ¶ 10, or obtain review of whether the condition is "improper, unreasonable, or an abuse of discretion," Opinion, ¶ 17. Indeed, our precedents are well settled on this point:  failure to object at sentencing precludes review of the reasonableness of the sentence. *State v. Ashby*, 2008 MT 83, ¶¶ 9, 22, 342 Mont. 187, 179 P.3d 1164; *State v. Stiles*, 2008 MT 390, ¶ 14, 347 Mont. 95, 197 P.3d 966. But, similar to the distinction we drew in *Pena* between an "error" in sentencing and an outright lack of "power" to impose a sentence, we made clear in *Ashby* that there is a difference between an objectionable sentence and an illegal one; and while the former is not reviewable in the absence of a contemporaneous objection, the latter is. *Ashby*, ¶ 22 ("[I]n the event an illegal, rather than objectionable, condition is not challenged contemporaneously, we will continue to review such challenge on appeal under [*Lenihan*].").

17

¶37    Holt is not challenging the reasonableness of the parole-eligibility condition.   He is challenging its legality.  *See e.g.* Br. of Appellant at 4 ("The court erred and exceeded its statutory authority in sentencing Mr. Holt for burglary by requiring him to . . . complete sex offender treatment . . . ."); *id.* at 8 ("The unlawful sentencing provisions on the burglary conviction that require Mr. Holt to . . . complete sex offender treatment in MSP . . . must be stricken from the burglary sentence.").  Thus, we should be determining whether that condition is statutorily authorized.  The Court errs in failing to do so.

¶38    My ensuing discussion proceeds as follows.  I first review the standards for determining whether a term or condition of sentence is statutorily authorized.  I then address whether there is statutory authority for the sexual offender treatment condition on Holt's parole eligibility.  Lastly, I express my concern with the State's argument in support of the Level 3 sexual offender designation in Holt's burglary sentence.

## II.  Standards for Sentencing Authority

¶39    We have said that district courts are afforded "broad discretion" in criminal sentencing.  *State v. Herd*, 2004 MT 85, ¶ 18, 320 Mont. 490, 87 P.3d 1017; *see also State v. Hernandez*, 2009 MT 341, ¶¶ 14-15, 353 Mont. 111, 220 P.3d 25 (McGrath, C.J., specially concurring) (explaining why "[s]entencing discretion by necessity must be very broad").  However, we have also cautioned that this broad discretion "is not without limitation." *Herd*, ¶ 18; *accord State v. Zimmerman*, 2010 MT 44, ¶ 17, 355 Mont. 286, 228 P.3d 1109 ("The broad discretion granted to district courts to impose sentencing conditions is not without limit.").  The reason is that "[a] district court's authority in sentencing a criminal defendant is defined and constrained by statute, and the court has

no power to impose a sentence in the absence of specific statutory authority." *Hicks*, ¶ 41. Hence, while a district court has broad discretion in imposing sentence, that discretion must first be "conferred by a legislature" and must then be "exercise[d] . . . within a statutory range." *Garrymore*, ¶ 29 (internal quotation marks omitted).

¶40 Authority to impose a particular sentence cannot be inferred. To the contrary, we have emphasized that a term of sentence must be "specifically and explicitly" authorized by "a *specific grant* of statutory authority." *Burch*, ¶¶ 23, 36 (emphasis added). Also, we have acknowledged the fundamental canons of statutory construction which state that

> [i]n interpreting such statutes [governing a sentencing judge's authority to impose a sentence], our role "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where the plain language of the statute is clear and unambiguous, no further interpretation is required."

*Burch*, ¶ 23 (quoting *State v. Kroll*, 2004 MT 203, ¶ 17, 322 Mont. 294, 95 P.3d 717).

¶41 Correspondingly, we have rejected the notion of "residual" sentencing authority. *See e.g. Burch*, ¶¶ 22-36. Likewise, we have rejected the proposition that sentencing authority is inherent. In *White*, for example, we observed that

> the State approaches this issue from the wrong perspective, asking whether the statute "limits" the court's sentencing authority. *District courts do not have inherent authority to impose criminal sentences except as "limited" by statute. To the contrary, it is well-established that . . . a district court has no power to impose a sentence in the absence of specific statutory authority.*

*White*, ¶ 22 (emphasis added).

¶42 In short, the threshold question in all cases involving a challenge to a term or condition of sentence is whether that term or condition is "specifically and explicitly"

19

authorized by a "specific grant" of statutory authority. The question whether the district court abused its discretion, or whether the term or condition is reasonable, does not enter into the analysis until a specific grant of authority to impose the term or condition has been located somewhere in the Montana Code Annotated. *Cf. Burch*, ¶ 29 ("[A] district court's authority is determined by statute, not administrative rule.").

¶43 From the oral pronouncement of sentence, it appears that the District Court relied on § 46-18-202(2), MCA, as authority for the sexual offender treatment condition. The State also cites this statute, plus two others: § 46-18-201(4)(o) and § 46-18-202(1)(f), MCA. None of these statutes, however, contains a "specific grant" of authority for a sentencing judge to impose conditions on a prisoner's parole eligibility.

### III. Sections 46-18-201(4)(o) and -202(2), MCA

¶44 First, § 46-18-201(4)(o), MCA, states that the sentencing judge may impose upon the offender any "reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." But the statute authorizes such restrictions or conditions "[w]hen deferring imposition of sentence or suspending all or a portion of execution of sentence." Section 46-18-201(4), MCA. And the restrictions or conditions apply "*during* the period of the deferred imposition or suspension of sentence." *Id.* (emphasis added). The statute does not grant authority to impose restrictions or conditions on anything but deferred and suspended sentences.

¶45 Second, § 46-18-202(2), MCA, states:

> Whenever the sentencing judge imposes a sentence of imprisonment in a state prison for a term exceeding 1 year, the sentencing judge may also impose *the restriction* that the offender is *ineligible for parole* and

20

participation in the supervised release program *while serving that term*. If *the restriction* is to be imposed, the sentencing judge shall state the reasons for it in writing. If the sentencing judge finds that *the restriction* is necessary for the protection of society, the judge shall impose *the restriction* as part of the sentence and the judgment must contain a statement of the reasons for *the restriction*. [Emphases added.]

¶46 Nothing in this language specifically and explicitly authorizes the imposition of conditions on parole eligibility. The statute does not say that the sentencing judge may impose "the restriction that the offender is ineligible for parole *unless the offender does X, Y, and Z*." Nor does the statute permit the sentencing judge to impose *restrictions* (plural) on parole eligibility. There is one—and only one—restriction authorized by this statute, as evidenced by the statute's repeated references to "the restriction." And "the restriction" which the statute authorizes is "the restriction that the offender is ineligible for parole . . . while serving that term [of imprisonment]"—period. Either the offender is deemed ineligible for parole while serving the term of imprisonment, or he is not. To place conditions on that eligibility is to impose a restriction different from the one restriction that is specifically and explicitly authorized by the statute. It goes further than the statute allows and impinges upon the authority of the parole board.[2] *See* ¶¶ 34-36, *infra*.

¶47 In sum, neither § 46-18-201(4)(o) nor § 46-18-202(2), MCA, contains a specific grant of authority for judges to impose restrictions or conditions on parole eligibility.

_____

[2] I therefore would overrule *State v. Bullman*, 2009 MT 37, ¶ 34, 349 Mont. 228, 203 P.3d 768, and *State v. Kirkbride*, 2008 MT 178, ¶ 18, 343 Mont. 409, 185 P.3d 340, which construed § 46-18-202(2), MCA, contrary to its plain language. Again, the statute authorizes one, and only one, restriction: "the restriction that the offender is ineligible for parole . . . while serving that term [of imprisonment]."

## IV.  Section 46-18-202(1)(f), MCA

¶48     Section 46-18-202(1)(f), MCA, authorizes the sentencing judge to impose on an offender's sentence any "limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society."  In *Burch*, we held that this statute does *not* provide a general authority to impose conditions relating to parole.  Reading the statute to authorize conditions on parole eligibility would thus be contrary to this precedent.  It would also be contrary to the Legislature's intent that the parole board exercise exclusive dominion over parole matters except where sentencing judges have been given specific and explicit authority to intrude into that arena.  I address these two points in turn.

### A.  *Burch*

¶49     In *Burch*, we considered whether the district court had authority to impose conditions on Burch's parole.  Burch argued that sentencing judges are not generally authorized to impose parole conditions in the absence of express statutory authority.  *Burch*, ¶ 16.  The State, however, argued that conditions on parole are lawful because parole is statutorily defined as "the release to the community of a prisoner . . . prior to the expiration of the prisoner's term."  Section 46-23-1001(3), MCA.  In other words, the State reasoned that because the term of parole is within the sentence originally imposed by the sentencing judge, the judge has the authority to impose parole conditions on a defendant who the judge has sentenced.  The State cited § 46-18-202(1), MCA, as the statutory basis for the judge to impose such conditions.  *Burch*, ¶¶ 17-18.

¶50     We rejected this reasoning.  We began with the well-established rule that "district courts do not have the power to impose a sentence unless authorized by a specific grant

22

of statutory authority." *Burch*, ¶ 23. We then analyzed the language of § 46-18-202(1), MCA, and observed that this provision "gives sentencing judges the statutory authority to impose the restrictions and conditions listed in subsections (1)(a) through (f) of the statute, 'on the sentence provided for in 46-18-201 . . . .' *In other words, the sentencing authority of sentencing judges is constrained and defined by § 46-18-201, MCA.*" *Burch*, ¶ 24 (ellipsis in original, emphasis added, citation omitted). We therefore turned to the language of § 46-18-201, MCA. We observed that this provision lists the types of sentence that may be imposed and gives sentencing judges authority to defer imposition of sentence, to suspend execution of sentence, to impose reasonable restrictions or conditions on the period of deferment or suspension, to impose restitution, and to suspend driving privileges. But we further observed that not a single subsection of this statute authorizes a sentencing judge to impose conditions on parole. *Burch*, ¶ 25.

¶51   We accordingly rejected the State's theory that § 46-18-202(1)(f), MCA, provides a general authority to impose parole conditions. We held that "sentencing judges have only the power to impose those parole conditions which are specifically and explicitly authorized by statute. Sentencing judges do not have a residual or inherent authority under Title 46, Chapter 18, Part 2, to generally impose parole conditions." *Burch*, ¶ 36. Thus, because there was no specific grant of authority for any (except one) of the parole conditions at issue, we held that those conditions could not be imposed on Burch's parole by the district court. *Burch*, ¶¶ 30-31, 36. We acknowledged this rule and reaffirmed it in *State v. Heafner*, 2010 MT 87, ¶¶ 5-6, 356 Mont. 128, 231 P.3d 1087. We stated: "It is clear that except as to *those specific conditions authorized by statute*, the District Court

23

did not have the power to impose conditions upon a future parole that might be granted to Heafner." *Heafner*, ¶ 6 (emphasis added).

¶52 Under *Burch*, then, judges lack authority to impose conditions to be met *during* parole, and the question here is whether judges have authority to impose conditions to be met *before* parole will be allowed. There is no language in § 46-18-201 or § 46-18-202(1), MCA, supporting such a distinction between conditions to be met *during* parole and conditions to be met *before* parole may be granted. The fact is that neither one of these statutes specifically and explicitly authorizes a judge to impose conditions on parole—whether the conditions are to be met *before* parole or *during* parole.[3]

¶53 Again, § 46-18-202(1), MCA, "cannot provide any greater sentencing authority than is provided for in § 46-18-201, MCA." *Burch*, ¶ 26. Turning to § 46-18-201, MCA, there is authority for the sentencing judge to impose a term of incarceration, to defer imposition of sentence, to suspend execution of sentence, to impose reasonable restrictions or conditions on the period of deferment or suspension, to impose restitution, and to suspend driving privileges. But there is no authority anywhere in the statute for the judge to grant parole, to restrict parole, or to place conditions on parole or parole eligibility. As a matter of fact, § 46-18-201, MCA, says *nothing whatsoever* about parole—as we already determined in *Burch*, ¶¶ 25-26.

---

[3] Admittedly, this conclusion is in tension with our decision in *State v. Marshall*, 2007 MT 218, ¶¶ 18-22, 339 Mont. 50, 170 P.3d 923, where we upheld a sexual offender treatment condition on the defendant's parole eligibility. However, we did not consider in that case the question whether sentencing judges have authority to impose conditions on parole eligibility. We simply assumed that such authority existed under § 46-18-202(1)(f), MCA—an invalid assumption after *Burch*.

24

¶54    While parole may be within (or a part of) a term of incarceration because it occurs prior to the expiration of the prisoner's term (as the State argued in *Burch*), this fact did not persuade us in *Burch* that the judge has authority to place conditions on the parole. Equally so, the fact that parole may be within (or a part of) a term of incarceration does not mean that the judge has authority to place conditions on the prisoner's eligibility for that parole. Sentencing authority must be specifically and explicitly granted; it may not be inferred. Sections 46-18-201 and -202(1), MCA, do not contain a specific and explicit grant of authority to sentencing judges to impose conditions on parole eligibility.

### B.  The Parole Board

¶55    Even assuming, for the sake of argument, that § 46-18-202(1)(f), MCA, could be construed broadly to grant sentencing judges authority over parole eligibility, doing so would undermine the Legislature's delegation of this matter to the parole board.

¶56    It would be one thing if parole was not covered elsewhere in the Montana Code Annotated.   In that situation, one might argue for an expansive construction of § 46-18-202(1)(f), MCA.  But the reality is that the Legislature has created a Board of Pardons and Parole, § 2-15-2302, MCA, and has enacted a statutory scheme defining that agency's powers, duties, and responsibilities (Title 46, chapter 23, parts 1, 2, 3, 10, MCA).  The Legislature has specifically delegated to the parole board the authority to decide matters relating to parole, § 46-23-104(1), MCA ("The board of pardons and parole is responsible for . . . parole as provided in this chapter."), and that includes parole eligibility, § 46-23-218(1), MCA ("The board may adopt any rules that it considers proper or necessary with respect to the eligibility of prisoners for parole . . . .").

25

¶57 Indeed, the members of the parole board—not sentencing judges—are charged with determining whether, when, and under what conditions an offender is eligible for parole. "Parole" is defined as "the release to the community of a prisoner *by the decision of the board* prior to the expiration of the prisoner's term." Section 46-23-1001(3), MCA (emphasis added). Release on nonmedical parole is authorized "when *the board* believes that the prisoner is able and willing to fulfill the obligations of a law-abiding citizen" and "when in *its* opinion [i.e., *the board's* opinion] there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community." Section 46-23-201(1), (5), MCA (emphases added). There are express limitations on the board's discretion to grant parole. *See* § 46-23-201(2)-(4), MCA.[4] But one, and only one, of those limitations may be imposed by a sentencing judge—namely, that the offender is outright ineligible for parole while serving the term of imprisonment. Section 46-23-201(2), MCA (cross-referencing § 46-18-202(2), MCA). The decision to grant nonmedical parole is otherwise left entirely to the parole board's discretion.

¶58 Similarly, "[t]he board" is authorized to release on medical parole a prisoner who has a qualifying medical condition, who is not under a sentence of death or life imprisonment without possibility of release, and who is unlikely to pose a detriment to

---

[4] Subsection (2) states that persons under sentence of death, persons who have been placed by the Department of Corrections in prison temporarily for assessment or sanctioning, persons serving a sentence under § 46-18-219, MCA (life imprisonment without possibility of release), and persons serving a sentence under § 46-18-202(2), MCA (deemed by the sentencing judge to be parole ineligible), may not be paroled. Subsection (3) states that a prisoner serving a time sentence may not be paroled until the prisoner has served at least one-fourth of the full term. Subsection (4) states that a prisoner serving a life sentence may not be paroled until the prisoner has served 30 years.

himself or herself, the victim, or the community. Section 46-23-210(1), MCA. As with nonmedical parole, the statute governing medical parole recognizes one, and only one, situation where a sentencing judge may interfere with the board's otherwise exclusive decision-making power: where the sentencing judge designates the offender totally ineligible for parole under § 46-18-202(2), MCA. In that situation, the prisoner must obtain "approval of the sentencing judge before being eligible for medical parole." Section 46-23-210(2), MCA. But the statute does not reference or even contemplate the possibility of there being any other restrictions placed on parole eligibility by a sentencing judge. Aside from the one restriction authorized by § 46-18-202(2), MCA, the determination whether a prisoner is eligible for medical parole is entirely within the parole board's discretion.

¶59 In creating the Board of Pardons and Parole and making that agency "responsible for . . . parole" (§ 46-23-104(1), MCA), including "the eligibility of prisoners for parole" (§ 46-23-218(1), MCA), it is clear that the Legislature intended for parole matters to be handled and decided by the board, not sentencing judges. Significantly, there is no provision in any of the sentencing statutes (Title 46, chapter 18, MCA) explicitly granting sentencing judges a general authority to impose conditions on parole or parole eligibility. Rather, the Legislature has been quite specific about the few instances in which a judge may intrude upon parole matters.

¶60 For example, a judge sentencing a sexual or violent offender "shall, as a condition to probation, *parole*, or deferment or suspension of sentence, impose upon the defendant reasonable employment or occupational prohibitions and restrictions designed to protect

27

the class or classes of persons containing the likely victims of further offenses by the defendant." Section 46-18-255(1), MCA (emphasis added). When sentencing a Level 3 sexual offender, the judge also "shall, as a condition of probation, *parole*, conditional release, or deferment or suspension of sentence, require the offender to participate in the program for the continuous satellite-based monitoring of sexual offenders." Section 46-18-206, MCA (emphasis added). If a victim has sustained pecuniary loss, the judge "shall, as part of the sentence, require [the] offender to make full restitution," which is to be "a condition of any probation or *parole*." Section 46-18-241(1), MCA (emphasis added). And when an offender is sentenced to imprisonment for a term exceeding one year, the judge "may also impose the restriction that the offender is ineligible for parole . . . while serving that term." Section 46-18-202(2), MCA. As this last statute demonstrates, the Legislature knows how to grant a sentencing judge authority to impose restrictions relating to parole eligibility. It simply says so—expressly.

¶61 So, to summarize, the Legislature created the Board of Pardons and Parole. The Legislature granted that agency authority over parole. And the Legislature provided for a very few specific and explicit exceptions where a sentencing judge may intrude upon the parole board's otherwise exclusive authority over parole matters. In these circumstances, it would be absurd to conclude that the Legislature intended § 46-18-202(1)(f), MCA, to be construed as a broad grant of authority to sentencing judges to decide the conditions under which a prisoner will be eligible for parole. We rejected the notion of "overlapping authority" in *Burch*, ¶¶ 21, 29; and such an approach would, in any event, undermine the Legislature's clear mandate that parole decisions be made by the parole board, not

28

sentencing judges. It would likewise undermine the Governor's constitutional power to grant reprieves, commutations, and pardons by allowing sentencing judges to impose conditions on an offender's eligibility for executive clemency—even though that too is a matter expressly delegated to the board and the Governor, not judges. *See* Mont. Const. art. VI, § 12 ("The governor may grant reprieves, commutations and pardons, restore citizenship, and suspend and remit fines and forfeitures subject to procedures provided by law."); § 46-23-104(1), MCA ("The board of pardons and parole is responsible for executive clemency and parole as provided in this chapter.").

¶62    "In the construction of a statute, the intention of the legislature is to be pursued if possible." Section 1-2-102, MCA. "We interpret a statute to give effect to its purpose and to avoid absurd results." *In re Marriage of McMichael*, 2006 MT 237, ¶ 14, 333 Mont. 517, 143 P.3d 439. But "the office of the judge is simply to ascertain and declare what is in terms or in substance contained [in the statute], not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. Finally, a specific legislative directive controls over a general legislative directive to the extent of any inconsistency between the two. Section 1-2-102, MCA; *Mosley v. Am. Express Fin. Advisors, Inc.*, 2010 MT 78, ¶ 20, 356 Mont. 27, 230 P.3d 479.

¶63    Here, §§ 46-18-201(3)(a)(iii) and -202(1)(f), MCA, read together, are a *general* grant of authority to sentencing judges to impose on an offender's term of incarceration any restrictions or conditions that the judge considers necessary to obtain the objectives of rehabilitation and the protection of the victim and society. However, this authority is necessarily circumscribed by the Legislature's *specific* directive that parole matters are to

29

be decided by the parole board. That specific intent is reflected in the Legislature's allocation of responsibility for parole to the parole board and by the fact that the Legislature has provided for only a few limited situations in which a sentencing judge may impose restrictions or conditions relating to parole. In essence, the Legislature took the pie represented by § 46-18-202(1)(f), MCA, carved out the piece relating to parole, and handed all but a few morsels of it to the parole board.

¶64 Under the statutory scheme, a sentencing judge has express authority to say that an inmate will *never* be parole eligible. Section 46-18-202(2), MCA. But that is the extent of the judge's authority. If the judge does not impose that restriction, then the decision as to whether, when, and under what conditions an inmate becomes eligible for parole is exclusively the prerogative of the parole board. Thus, when a sentencing judge imposes conditions on parole eligibility, she or he is interfering with the authority and discretion that the Legislature specifically delegated to the parole board. Indeed, the judge effectively deprives the parole board of its ability to exercise its legislatively conferred powers until the judge's imposed conditions are met.

¶65 In sum, a construction of § 46-18-202(1)(f), MCA, as granting sentencing judges authority to decide when a prisoner will be eligible for parole would be contrary to the statutory scheme, counter to the Legislature's intent, and violative of our canons of statutory construction. The exercise of that power is plainly with the board, not judges.

### V. The Level 3 Designation

¶66 Lastly, for purposes of future cases, I express my concern with the State's argument in support of the Level 3 tier designation in Holt's burglary sentence.

30

¶67 Section 46-23-509(2), MCA (2005), states: "Prior to sentencing of a person convicted of a sexual offense, the department or a sexual offender evaluator shall provide the court with a sexual offender evaluation report recommending one of the following levels of designation for the offender . . . ." Section 46-23-509(3), MCA, in turn, states: "Upon sentencing the offender, the court shall . . . review the sexual offender evaluation report, any statement by a victim, and any statement by the offender; [and] designate the offender as level 1, 2, or 3 . . . ." As Holt points out, burglary is not a "sexual offense." *See* § 46-23-502(6), MCA. Thus, a tier level designation should not have been included in his burglary sentence. Opinion, ¶ 21.

¶68 The State's contrary argument proceeds as follows. First, the State notes that the definition of "sexual offense" includes "any violation of a law of another state . . . that is reasonably equivalent to a violation listed in subsection (6)(a)." Section 46-23-502(6)(b), MCA. The State then points out that Holt was previously convicted of violating a law of Louisiana that is reasonably equivalent to one of the crimes listed in subsection (6)(a) (namely, sexual assault on a minor). Consequently, the State reasons that he is "a person convicted of a sexual offense" for purposes of § 46-23-509(2), MCA. In other words, the State argues that "whenever 'a person convicted of a sexual offense' is sentenced for *any* crime" (emphasis added), the judge must impose a tier level designation. Hence, if a person was convicted of a sexual offense in Kentucky and is now being sentenced for running a red light in Montana, the judge must order a sexual offender evaluation report and impose a tier level designation on the defendant's sentence for the traffic violation.

31

¶69 While this construction of the statutory scheme is certainly inventive, it ultimately must be rejected. "Statutory construction should not lead to absurd results if a reasonable interpretation can avoid it." *State v. Letasky*, 2007 MT 51, ¶ 11, 336 Mont. 178, 152 P.3d 1288. The notion that sentencing judges are supposed to impose tier level designations and sexual offender treatment programs upon convictions for speeding, shoplifting, possession of stolen property, inciting a riot, arson, and the like is, frankly, absurd. Section 46-23-509(2) and (3), MCA, must be interpreted as applying when the judge is sentencing an offender upon conviction of a sexual offense. Indeed, the language of other statutes which cross-reference § 46-23-509, MCA, make it clear that this was the interpretation intended. *See e.g.* §§ 46-18-207, -255, MCA (2009).

## VI. Conclusion

¶70 In *Hernandez*, Chief Justice McGrath pointed out that "[t]he Legislature has created the process to review sentences." *Hernandez*, ¶ 16 (McGrath, C.J., specially concurring). Specifically, "the Legislature has provided the Sentence Review Division [SRD] for the exclusive review of legally authorized felony sentences." *Hernandez*, ¶ 11 (McGrath, C.J., specially concurring). The Chief Justice made the point that, given the existence of the SRD and the Legislature's plain intent that sentences be reviewed by that body, this Court should not impinge upon that delegation of authority by reviewing sentences for reasonableness. *Hernandez*, ¶ 12 (McGrath, C.J., specially concurring); *but see Zimmerman*, ¶ 24 (McGrath, C.J., specially concurring).

¶71 This same principle, applied here, mandates that sentencing judges refrain from imposing terms and conditions relating to parole. Parole is a matter delegated exclusively

to the Board of Pardons and Parole, except where specific statutory authority allows a sentencing judge to impose specifically and explicitly enumerated restrictions on parole. *Burch*, ¶¶ 14-31, 36. Sentencing judges have attempted to interfere with the parole process for some time now, but both this Court and the Legislature have consistently rejected their attempts to do so. The District Court's sentence here interfered with a matter that is left solely to the discretion of the parole board. Again, a sentencing judge has authority to say that an inmate will *never* become parole eligible, § 46-18-202(2), MCA, but that is the extent of the judge's authority. If the judge does not impose that restriction, then the determination of whether, when, and under what conditions an inmate becomes eligible for parole is exclusively the prerogative of the parole board.

¶72 It is clear that when the Legislature wants to grant authority to sentencing judges to restrict parole eligibility, it is capable of doing so—as it did in § 46-18-202(2), MCA. It is also clear that when the Legislature wants to put a condition on parole eligibility, it is likewise capable of doing so. In this regard, § 46-18-207(2), MCA (2009), now requires a sentencing judge to order a sexual offender who is sentenced to imprisonment to enroll in a treatment program, and subsection (3) of the statute states that the offender is not eligible for parole unless the program has been successfully completed. In other words, the Legislature has conditioned parole eligibility on completion of the treatment program, as the District Court did here. This statute is inapplicable in the present case because it was enacted in 2007 (after Holt's offense[5]) and because the offense of burglary is not a

---

[5] *State v. Tracy*, 2005 MT 128, ¶ 16, 327 Mont. 220, 113 P.3d 297 (a person has the right to be sentenced under the statutes which are in effect at the time of the offense).

"sexual offense." But the point is that the Legislature knows how to make specific grants of authority to sentencing judges to place restrictions on parole eligibility. Courts should not be inferring the existence of such authority by judicial fiat.

¶73 The State cites, and I have found, no statute (applicable to Holt's 2006 burglary offense) specifically and explicitly authorizing a sentencing judge to impose a sexual offender treatment condition on an offender's parole eligibility. I accordingly would hold that this condition on Holt's burglary sentence is illegal. We should reverse and remand for resentencing, at which point if the District Court wants to make a *recommendation* to the parole board that Holt complete a sexual offender treatment program before being eligible for parole, the court may do so.

¶74 I concur and dissent.

/S/ JAMES C. NELSON

Justice Patricia O. Cotter joins in the Concurrence and Dissent of Justice James C. Nelson.

/S/ PATRICIA O. COTTER